IN RE CARPENTER.

[Cite as In re Carpenter (1972), 31 Ohio App. 2d 184.]

(No. 71-409—Decided March 21, 1972.)

*Mr. George C. Smith,* prosecuting attorney, and *Mr. C. William Brownfield, Jr.,* for appellee, the state of Ohio.

*Mr. Theodore G. Fisher, Mr. Denis J. Murphy* and *Mr. Jonathan W. Marshall,* for appellant.

Troop, P. J. Robert William Carpenter, 14 years of age, was charged, by the affidavit of a police officer, with a violation of the Columbus Code (hereafter referred to as C. C.), Section 2359.08, on May 28, 1971, as follows:

"He was in a public place at 2:00 p. m. during the hours when he was required to be in attendance at his school."

The minor, Carpenter, was brought before and tried to, the juvenile division of the Common Pleas Court, and at a hearing October 6, 1971, counsel for the defense renewed a motion, previously addressed to the court, "to have the ordinance declared to be unconstitutional." It appears from the transcript that defense counsel urged disposition of the motion in the abstract. Upon refusal of the court to proceed without being acquainted with the facts in the case, a stipulation of facts resulted from agreement between counsel for the state and defense.

Stipulated facts relating to the matter of Robert William Carpenter and the incident of May 28, 1971, are as follows:

"It is stipulated by and between counsel that on the date on or about May 28, 1971, there was in effect in the City of Columbus, County of Franklin, State of Ohio, a daylight curfew. This ordinance is 2359.08.

"It is further stipulated by and between counsel that the Defendant, Robert Carpenter, is 15 years of age and on or about the 28th day of May, 1971, was a regularly enrolled student at Indianola Junior High School within the City of Columbus, County of Franklin, State of Ohio. That on or about the 28th day of May, 1971, classes were in session at Indianola Junior High School and that on May 28, 1971, Robert Carpenter was not excused from class attendance.

"It is further stipulated by and between the parties

that on May 28, 1971, Robert Carpenter was arrested on a public street within the City of Columbus, County of Franklin, State of Ohio, by two Columbus Policemen.''

And as corrected the balance of the stipulation reads: ''It is further stipulated by and between counsel that on or about May 28, 1971, when Robert Carpenter, age 15, was arrested by two Columbus Police Officers, he gave no reason for not being present at Indianola Junior High School.''

Defense counsel remarked, ''For not being on the street.'' The court responded: ''That's the same thing. He offered no excuse or reason for his presence on the street when he should have been in school.''

In a carefully written and comprehensive ''opinion,'' filed November 3, 1971, the trial court overruled the defense motion asking to have the ordinance declared unconstitutional. The formal journal entry of the court was filed November 19, 1971, and recites that the court found ''* * * Robert William Carpenter to be an unruly minor'' and imposed sentence. It is from this order that this appeal is taken, even though the defendant was later, on December 1, 1971, placed on probation, detention being set aside, and ordered to comply with C. C. 2359.08 until further order.

Counsel for the defendant develop five formal assignments of error in support of this appeal. Four of the five are essentially and basically the same as the four contentions made to the trial court in counsel's attempt to persuade the court to declare the challenged ordinance unconstitutional. This additional assignment of error, numbered 4, urges that C. C. 2359.08 is unconstitutional because the city council lacks authority to legislate in the area of compulsory school attendance. Attention is directed first to this assignment of error since it infers at least that the effort of the legislative body of the city is in ''conflict'' with the ''law'' of Ohio.

Section 3, Article XVIII of the Constitution of Ohio provides as follows:

''Municipalities shall have authority to exercise all

powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

The argument of defense counsel is to the effect that the offending ordinance is in conflict with the compulsory school attendance laws. A brief review of these laws might assist in considering this problem.

Compulsory school age is defined in R. C. 3321.01, the nub of which is as follows: "A child between six and eighteen years of age is 'of compulsory school age' for the purposes of R. C. 3321.01 to 3321.13, inclusive." There is a chance for slight variation temporarily. R. C. 3321.02 states that every child resident in this state is amenable to the law. That attendance is required is equally clear. As provided in R. C. 3321.03, "every child of compulsory school age * * * shall attend a school * * *." The only exceptions are children employed under a work certificate and those found and determined to be of such mentality that they would be unable to profit by attendance.

Every city school district is required to have an attendance officer (R. C. 3321.14) who may investigate any case of nonattendance of a child under 18 (R. C. 3321.16). Such attendance officer "shall be vested with police powers," according to R. C. 3321.17. The officer may serve warrants and take into custody any youth of school age not legally employed, "who is not attending school and shall conduct such youth to the school he has been attending or should regularly attend."

With this brief background, the language of the ordinance which defendant challenges becomes important. It is as follows:

"No person under the age of 18 years shall be upon or about public streets, public places or places of amusement and entertainment within the City during the hours when said person is required to be in attendance at either a public or private school * * *."

The constitutionality of the compulsory school laws and the power of the school authorities established by the

laws noted stand undisputed. *Parr* v. *Ohio* (1927), 117 Ohio St. 23, makes constitutionality clear. After citing abundant authority holding that "their constitutionality is beyond dispute," the court adds: "but we regard the constitutionality of such laws as so well established that other citation is unnecessary." The constitutionality of compulsory school attendance is accepted and unchallenged by the defendant.

A glance at the problem of "conflict" with "general laws" is suggested by the contention that there is something exclusive about school attendance laws. The decision in *Leis* v. *Cleveland Ry. Co.* (1920), 101 Ohio St. 162, deals with a city ordinance, which regulated the conduct of motormen, claimed to be in conflict with the "general" law— general meaning common law. The court said that Section 3, Article XVIII, refers to "regulations as are not in conflict with general laws, the words 'general laws' refer to laws passed by the legislature which are of general application throughout the state."

The Supreme Court in *City of Akron* v. *Scalera* (1939), 135 Ohio St. 65, held that an ordinance which prohibited the sale of beer was not in conflict with the provisions of the liquor control act because they are not "general laws" as to hours.

An ordinance to fix hours for barber shops is the subject of the decision in *City of Cincinnati* v. *Correll* (1943), 141 Ohio St. 535, which is illustrative of a conflict. Reversing an earlier decision which had held a comparable ordinance not in conflict under Section 3, Article XVIII, the court held Sections 3 and 7 not to be so interpreted because the legislative powers of the General Assembly in matters of hours of labor are set out in Section 34, Article II of the Ohio Constitution, making the ordinance in conflict with general law. The court generalizes at page 539, saying:

"Laws or ordinances passed by virture of the police power which limit or abrogate constitutionally guaranteed rights must not be arbitrary, discriminatory, capricious or unreasonable and must bear a real and substan-

tial relation to the object sought to be obtained namely, the health, safety, morals or general welfare of the public.''

A Cleveland ordinance restricted the operation of heavy trucks on certain streets of the city. The pronouncements of the Court of Appeals in *City of Cleveland* v. *Antonio* (1955), 100 Ohio App. 334, are worthy of note, as follows:

''1. The burden of showing that an ordinance is unconstitutional is upon the one challenging it. The degree of proof that an ordinance is unconstitutional must be clear and convincing. The courts will not hold an ordinance unconstitutional unless it is clear that it has no real or substantial relation to public health, safety, morals or welfare, or is unreasonable or arbitrary and infringes rights secured by fundamental law.''

The court held that the ordinance was unreasonable in that it prohibited traffic on a street which provided a trucking company its only ingress and egress to its premises. This ordinance was not contrary to Section 3, Article XVIII, nor in conflict with a general law passed by the Ohio legislature. It must, necessarily, have violated a constitutional right to support the decision of the trial court.

This Tenth District Court of Appeals decided *Alice Realty, Inc.,* v. *Columbus (City)* (1957), 76 Ohio Law Abs. 311, and the decision cites and follows *Antonio*. The language of the court in paragraphs 1 and 2 of the syllabus is as follows:

''1. In determining the constitutionality of a municipal ordinance as measured by the police power the only inquiries essential are (1) whether the statute is an unreasonable, arbitrary and oppressive exercise of the police power, and (2) whether it is reasonaby designed to accomplish the purpose falling within the scope of the police power.

''2. In the enactment of municipal ordinances under the police power much must be left to the discretion of the municipal authorities, and their acts will not be interfered

with by a court unless they are manifestly unreasonable or oppressive.''

As to the offending ordinance, C. C. 2359.08, this court holds that it in no sense "conflicts" with any general law passed by the Ohio legislature. Counsel for the appellant rely upon, and quote from, *The State, ex rel. Chalfin,* v. *Glick* (1960), 113 Ohio App. 23 (affirmed, 172 Ohio St. 249), to establish their point that school attendance laws are exclusive. The controversy in *Chalfin* was concerned with the quality of education in a private school. The defendant quotes accurately, but that the pronouncement is not entitled to standing as a general rule is established by the court itself. At page 32, it says:

''This decision should not be construed in any way as upholding the right of the respondent parents to refuse to send their children to a school which meets the compulsory educational laws of the state, or as relieving them from compliance with such laws.''

There can be no conflict between a school attendance law, even if it qualifies as a general law which is doubtful, and an ordinance that requires the same thing. There is a very real distinction which denies any conflict. The legislature made absence from school, or truancy, bad conduct; the city ordinance makes that same absence a misdemeanor. Rather than conflict, the two restrictive measures are complementary, seeking the same ends—to keep every child of compulsory school age (under 18) off the streets and in school.

The ordinance, we believe, and we so hold, is not in conflict with general law and is reasonable and not arbitrary.

It is not unreasonable to require one under 18 years of age to be where he is required to be under all the existing law. The ordinance infringes no due process right since, as in the instant case, the minor knew full well that he was required by law to be in school.

Such requirement should also have been known by the minor's parents. Not to have school children on the street, doing as they choose, has a substantial relation to public safety and laws and, hence, the general welfare.

If nothing else, for groups of youths to be on the streets when not anticipated by police officers makes for traffic dangers if not misconduct of a more serious nature.

If there be any conflict with general law, it can only be with respect to the fundamental law as is suggested by the court in *Antonio*. Defendant suggests "vagueness" as a ground for finding the ordinance unconstitutional. The vagueness about which defendant complains is as to that portion of the ordinance which says:

"* * * unless said person * * * is upon an emergency errand or other legitimate business * * *."

Such contention ignores the definition of the offense set out in the ordinance, which is perfectly clear, that a person under 18 shall be in the schools during those hours he is required to be there. That requirement is made unmistakably plain by the ordinance. The wording of the provision to which counsel object does not describe the offense but simply provides the violator with a defense—one he can give an officer or a court.

In this instant case, Carpenter chose not to offer an extenuation for his being a truant, or "playing hooky" as it was formally regarded, to the officer or to the trial court. Available defenses, created by the ordinance, cannot be said to obscure what the ordinance clearly tells the school pupil he must not do. Carpenter had "fair notice" beforehand what was required of him.

A decision of the Eleventh District Court of Appeals in *City of Eastlake* v. *Ruggiero* (1966), 7 Ohio App. 2d 212, held a nighttime curfew ordinance constitutional which also included an "unless" clause. It might be said to be vague since it provides a defense for the challenged offender; *i. e.*, to be accompanied by "some responsible person over the age of 21." The decision is noted not only for these reasons, but for the general pronouncements made in paragraph 1 of the syllabus, as follows:

"The activities and conduct of minor children under eighteen years may be regulated and restricted to a far greater extent than those of adults."

Counsel for defendant accept the proposition quoted from *Ruggiero,* but go on to urge that the "under the age

of 18" application of the ordinance "is an unreasonable classification," because, said counsel, "age difference of one day may result in substantial restriction of one individual's right to travel."

Classifications always require arbitrary lines. It must be so. One day's difference in age could have meant that this young man would have been tried in the municipal court instead of the juvenile court where procedures are designed by law to be adapted to considering problems of the young. Counsel have raised no such objection as respects the jurisdiction of the court. Counsel's concern that the ordinance cuts off the right of the student under 18 "to picket or redress his government during school hours" encounters the practical difficulty of his not being able to do it under the compulsory school laws, which require his presence in school, and which laws have consistently been found to be constitutional. Defendant can still protest or picket his government after school hours, just as he has always been able to do since he was subject to compulsory school attendance laws.

Defendant reinforces his argument of discrimination by calling attention to decisions in *Corrigan* v. *Buckley* (1926), 271 U. S. 323, *Brown* v. *Board of Education of Topeka* (1954), 347 U. S. 483, *Burton* v. *Wilmington Parking Authority* (1961), 365 U. S. 715, and *Baker* v. *Carr* (1962), 369 U. S. 186. It is noteworthy that the first of these decisions deals with the racial problem. The first noted case settles nothing since the action, involving landowners who agreed not to sell to negroes for 21 years, was dismissed for want of jurisdiction. *Brown* was a school segregation case and *Burton* involved a restaurant leased by the state of Delaware to an operator who refused to sell to a black. Neither case can be regarded as dealing squarely with a genuine "classification" problem such as the one here for review, since they turn on the broad base of racial discrimination. *Baker*, in turn, invokes Tennessee's apportionment law of 1901, a far cry from a classification problem.

Defendant makes some point of emergency recognized by the city council as set out in the preamble to the or-

dinance. The Ohio Supreme Court in *The State, ex rel. City of Fostoria,* v. *King* (1950), 154 Ohio St. 213, held that the soundness of reasons stated by a municipal counsel "are not subject to review by the courts." That rule is followed in *Dubyak* v. *Kovach* (1955), 164 Ohio St. 247, in which the court said, at page 253: "* * * it is the law that the courts can not inquire into the facts of the emergency set up in the ordinance."

Counsel for defendant urge strongly that C. C. 2359.-08, being "overbroad," comes within the purview of the First, Fourth, and Fourteenth Amendments to the United States Constitution, either singly or in combination, and further that it produces self-incrimination in violation of the Fifth and Fourteenth Amendments. We do not consider these questions.

This court in a recent unpublished decision, *State* v. *Mitchell,* No. 71-395, released March 14, 1972, reviewed at length various concepts and philosophies concerning the propriety of the First Amendment, emphatically taking the position that "pure speech" is historically established as the area in which the First Amendment is applicable and that a mere act is only drawn within the range of the amendment by straining the traditional basic concept. The stipulation of facts before the trial court says that Robert Carpenter, a regularly enrolled student, while classes, from which he was not excused, were in session, was on a public street in the city of Columbus, where he was arrested. There is no indication that Carpenter was engaged in activities involving the exercise of a right directly concerned with the "pure speech" protection of the First Amendment. On the contrary, it is stipulated that "he gave no reason for not being present at Indianola Junior High School."

Such being the agreed facts, there is no evidence of speech of any kind. It requires a strained interpretation to suggest "expression" or "symbolic speech" is involved in this case where there is no protest, or "message" beamed to anyone—his school authorities, the people, the city, or the "government."

With no more effect than is indicated before the trial

court, it can only be said that he was a truant, not in class but on the street, out of just pure "cussedness," to put it mildly, or that he willfully defied duly constituted and constitutional authority.

There is no protection for such "conduct" under the First Amendment or under the First in combination with the Fourteenth.

The allegation that defendant was forced into a position of self-incrimination in violation of the Fifth Amendment is interesting in that he was "caught in the act," as it is put in the vernacular. One caught in the act of taking money from the till and putting it in his pocket cannot be said to be protected by the Fifth Amendment because he caused his own arrest by his act. So it is with the truant on the street; his act caused his arrest and he too is not protected under the Fifth Amendment.

Counsel is concerned about freedom of movement being prevented by the city. Again, Carpenter's movement during school hours was restricted by attendance laws already held to be constitutional. The Eleventh District Court of Appeals held a nighttime curfew law constitutional which restricted movement at times when there were no other existing limitations on the movements of those under 18 years of age. The decision in *Ruggiero* has been noted, ante, and for the reasons advanced by Judge Lynch in that decision and the authorities upon which he relied, we hold the ordinance here challenged to be constitutional and not unduly restrictive of the movements of young Carpenter.

As was the situation in the many cases in which it has been claimed that a violation of the First Amendment was involved and the court found such was not true but, rather, a question concerning Fourteenth Amendment protections was present, it is necessary to examine this record for such possibility. City ordinances may restrict basic liberty only when the limitation bears a real and substantial relation to the public health, safety, morals or general welfare, and the limitation is not unreasonabe or arbitrary. (*Benjamin v. City of Coumbus* [1957], 167 Ohio St. 103.) As pointed

out in *Coates et al.* v. *City of Cincinnati* (1971), 91 S. Ct. 1686, a city is free to prevent many forms of antisocial conduct but it can do so only through the enactment and enforcement of ordinances directed with reasonable specificity toward the conduct to be prohibited.

In the instant situation, nothing could be more specific than the prohibiting of a youth under 18 years of age from being on the street when he should be in school—an act which is a cold, ascertainable fact whether a policeman is annoyed or not.

The ordinance challenged in this appeal, which makes absence from school and presence on the street a misdemeanor, is no more unreasonable or arbitrary than the compulsory attendance laws it supplements. The general welfare, if not the public safety and morals, is enhanced by such laws.

No organized society will ever be more completely free than one composed of an intelligent citizenry functioning within a framework of compulsory education. Such a framework enables an enlightened citizenry to change those laws which are, or become, unreasonably or severely restrictive, by the regularly ordained legislative processes rather than by defiance of the law, as is reflected in the ''I will do as I please attitude'' demonstrated in the instant case.

As the trial court well said: ''The time for reason to triumph over super-technicalities in the law is long overdue.''

For the reasons advanced, the assignments of error offered by defendant are found not well taken and are overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

HOLMES and WHITESIDE, JJ., concur.