MOWERY, Appellant,

v.

SHOAF, d.b.a. Salem Heritage Enterprises, and d.b.a. Salem Towers, Inc., Appellee.

[Cite as *Mowery v. Shoaf,* 148 Ohio App.3d 403, 2002-Ohio-3006.]

Court of Appeals of Ohio,
Seventh District, Columbiana County.

No. 01–CO–40.

Decided June 12, 2002.

Irene K. Makridis, for appellant.

Roth, Blair, Roberts, Strasfeld & Lodge and David S. Barbee, for appellee.

WAITE, Judge.

{¶ 1} This timely appeal arises from a decision of the Columbiana County Court of Common Pleas granting appellee's motion for summary judgment and dismissing appellant's negligence claim. In light of the discussion that follows, this court must affirm the judgment reached by the trial court.

{¶ 2} On September 12, 1995, at approximately 10:00 p.m., Nancy Mowery ("appellant") sustained injury on property owned by Marjorie Shoaf, d.b.a. Salem Heritage Enterprises and d.b.a. Salem Towers, Inc. ("appellee"). Appellee owns an apartment complex located at 1080 North Lincoln Street in Salem, Ohio. Appellant had been visiting briefly with William Porteous, a friend who lived in one of the buildings at the complex. Afterward, appellant exited via the rear of the building and headed toward her car. As appellant started across a driveway that serviced the rear of the building, the heel of her right shoe caught in a storm drain causing her to fall.

{¶ 3} Appellant had visited the apartment complex to check on Porteous, who was ill. Appellant and Porteous, both of whom were well into their seventies at the time of the incident, had been seeing each other. When appellant learned that he was not well, she asked her friend, Louise Gleason, to drive her there so appellant could bring Porteous some flowers. When the women arrived, appellant went inside while Gleason parked the vehicle in a lot behind the building and waited for her to return.

{¶ 4} Appellant visited with Porteous briefly and then headed back toward the car. As she left the building, she immediately noted that it was very dark outside and that the area around the building's exterior was not well lit. Appellant began crossing the driveway on her way to the parking lot when the heel of her shoe slipped into a sewer grate and broke off, causing her to fall forward. In the fall, appellant injured her arms, right knee, and right ankle. Appellant subsequently underwent surgery to repair damage sustained to her ankle.

{¶ 5} On August 22, 1997, appellant filed a complaint in the court of common pleas, alleging that appellee was negligent in failing to maintain its premises in a reasonably safe condition. Appellant also claimed that appellee negligently permitted an unreasonably dangerous condition to exist upon the premises, that appellee failed to warn appellant of the unreasonably dangerous condition, and that as a direct and proximate consequence of appellee's negligence, appellant sustained substantial personal injury.

{¶ 6} Eventually, appellee sought and received leave to file a motion for summary judgment. With the motion, appellee submitted transcripts from the depositions of appellee, her husband, tenant William Porteous, on-site manager

James Miller, and appellant. Appellant responded to appellee's motion, and also submitted her affidavit and that of Louise Gleason. On July 17, 2001, the trial court granted appellee's motion for summary judgment and dismissed appellant's complaint.

{¶ 7} In reaching its decision, the trial court first reasoned that appellant was a licensee at the time she fell at appellee's apartment complex because "she entered the premises by permission or acquiescence for her own pleasure or benefit and not by invitation." (Judgment Entry July 17, 2001, at 4.) The trial court resolved that under the circumstances, appellee's duty was only to "refrain from wantonly or willfully causing injury." Id. The trial court acknowledged that under R.C. 5321.04(A)(3), the landlord must maintain the common areas of the premises in a safe and sanitary condition. Id. But the court concluded that notwithstanding this duty, appellee had no duty to illuminate the parking area where appellant fell. Id.

{¶ 8} The trial court also determined as follows:

{¶ 9} "The defendant was not an insurer of [appellant's] safety and the record does not demonstrate that the grate upon which [she] fell in a common area of the apartment complex was either defective in design or condition such that it was unsafe. The fall occasioned by [appellant] was neither caused by nor becomes the responsibility of the defendant. Therefore, the Court finds no genuine issue of material fact and further finds that reasonable minds can come to but one conclusion. That conclusion is adverse to [appellant]." Id.

{¶ 10} Appellant filed a notice of appeal from the trial court's judgment entry on August 10, 2001.

{¶ 11} Appellant raises the following three assignments of error:

{¶ 12} "The trial court erred to the prejudice of appellant in ruling that a person lawfully in a 'common area' of leased premises does not have benefit of the rule that a landlord owes the same duties to a person lawfully on leased premises that he owes to a tenant.

{¶ 13} "The trial court erred to the prejudice of appellant in ruling that the duty owed by appellee to appellant was determined by the relationship of the parties; that is, whether appellant was on the premises owned by appellee as an invitee, licensee or social guest.

{¶ 14} "The trial court erred to the prejudice of appellant in ruling that appellant enjoyed the status of a licensee to whom appellee owed only a duty to refrain from wantonly or willfully causing injury."

{¶ 15} Although appellant purports to divide this appeal into three assignments of error, what she has actually done is restate the same issue three times

in three barely distinguishable ways. Thus, we will combine these into one discussion for the purpose of this decision.

{¶ 16} According to appellant, summary judgment was improper in this case because appellee owed her a duty to maintain the apartment complex in a safe and sanitary condition. Appellant maintains that since the area where the sewer grate over which she tripped was poorly lit, she was unable to see and avoid the danger it presented.

{¶ 17} Summary judgment under Civ.R. 56(C) is properly granted where the moving party demonstrates the following:

{¶ 18} " '(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.' " *Welco Industries, Inc. v. Applied Cos.* (1993), 67 Ohio St.3d 344, 346, 617 N.E.2d 1129, quoting *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 364 N.E.2d 267.

{¶ 19} In the event the moving party meets this initial burden, the opposing party bears a reciprocal burden in responding to the motion. *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 526 N.E.2d 798. Under Civ.R. 56(E), "a nonmovant may not rest on the mere allegations or denials of his pleading but must set forth specific facts showing there is a genuine issue for trial." *Chaney v. Clark Cty. Agricultural Soc., Inc.* (1993), 90 Ohio App.3d 421, 424, 629 N.E.2d 513. The nonmoving party must produce evidence on any issue for which that party bears the burden at trial. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264; and *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265.

{¶ 20} Because it is a fairly drastic means of terminating litigation, a court must grant summary judgment with caution, resolving all doubts against the moving party. *Osborne v. Lyles* (1992), 63 Ohio St.3d 326, 333, 587 N.E.2d 825. Nevertheless, summary judgment is appropriate if, after construing the evidence in a light most favorable to the opposing party, there exists no genuine issue of material fact and reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. *State ex rel. The V Cos. v. Marshall* (1998), 81 Ohio St.3d 467, 473, 692 N.E.2d 198. This court subjects the trial court's decision to grant summary judgment to de novo, i.e., nondeferential, review. *N. Coast Cable L.P. v. Hanneman* (1994), 98 Ohio App.3d 434, 440, 648 N.E.2d 875.

{¶ 21}  Appellant's complaint was based on a negligence claim.  To prevail on such a claim, a plaintiff must establish the existence of a duty, breach of that duty, and injury that was proximately caused by the breach.  *Menifee v. Ohio Welding Products, Inc.* (1984), 15 Ohio St.3d 75, 15 OBR 179, 472 N.E.2d 707. To defeat a motion for summary judgment where negligence has been alleged, a plaintiff must first identify the extent of the duty owed by the defendant.  The evidence must be sufficient, when considered most favorably to the plaintiff, to allow reasonable minds to infer that the duty was breached and this breach was the proximate cause of the plaintiff's injury.  *Sanders v. Anthony Allega Contrs.* (Dec. 30, 1999), 8th Dist. No. 74953, 1999 WL 1271740, citing *Feichtner v. Cleveland* (1994), 95 Ohio App.3d 388, 394, 642 N.E.2d 657.

{¶ 22}  Appellant takes the position that this case turns on the scope of appellee's duty to her while she was on appellee's property.  According to appellant, as landlord of the apartment complex where she was a social guest, appellee owed her the same duty it owed the tenant she was visiting.

{¶ 23}  The trial court granted summary judgment against appellant based on its conclusion that she was a licensee at the time she was injured on appellee's property.  Given that status, the court resolved, appellee had no obligation to insure appellant's safety.  (Judgment Entry, July 17, 2001, at 4.)  In addition, the court found that there was no evidence that the sewer grate upon which appellant fell was either defective in design or presented a condition that rendered it unsafe.  (Judgment Entry, July 17, 2001, at 4.)

{¶ 24}  Contrary to the trial court's determination, this case does not turn on appellant's common-law status at the time she was injured at appellee's apartment complex.  Under R.C. 5321.04(A)(3), a landlord is obliged to maintain the common areas of its premises in a safe and sanitary condition.  Since the apartment complex's driveway was obviously a common area of the property, appellee undoubtably had an obligation to keep that area of the property safe.

{¶ 25}  Nevertheless, the trial court's erroneous reliance on appellant's designation as a licensee was harmless in this matter because it reached the correct result, albeit for the wrong reasons.  As earlier discussed, landlords do owe a duty to maintain common areas in a safe condition for tenants and social visitors alike.  But merely acknowledging the existence of such a duty in no way leads to a conclusion that this duty was breached.  Appellant appears to assume that since there was a duty, an issue of fact necessarily exists with respect to whether it was breached.  This assumption is flawed.  Even when reviewing the record in a light most favorable to appellant, this court cannot say that the existence of a perfectly normal storm drain on a poorly illuminated driveway

created such a foreseeable danger to tenants and invitees that it gives rise to negligence on appellee's part.

{¶ 26} Traditionally, the nature and extent of the legal duty a landlord owed to other persons depended on that person's status on the landlord's property. *Light v. Ohio Univ.* (1986), 28 Ohio St.3d 66, 68, 28 OBR 165, 502 N.E.2d 611. Invitees are individuals who rightfully enter upon the premises of another by invitation for some purpose which is beneficial to the landowner. *Gladon v. Greater Cleveland Regional Transit Auth.* (1996), 75 Ohio St.3d 312, 315, 662 N.E.2d 287. A licensee is one who enters the landowner's premises with the landowner's permission or acquiescence for purposes beneficial to the licensee and not to the landowner. *Provencher v. Ohio Dept. of Transp.* (1990), 49 Ohio St.3d 265, 266, 551 N.E.2d 1257. A trespasser is one who enters onto property without invitation or permission, purely for his or her own purposes or convenience. *McKinney v. Hartz & Restle Realtors, Inc.* (1987), 31 Ohio St.3d 244, 246, 31 OBR 449, 510 N.E.2d 386.

{¶ 27} A landowner owes no duty to licensees or trespassers except to avoid willful and wanton conduct that is likely to injure them. *Combs v. Baker*, 12th Dist. No. CA2001-01-020, 2001-Ohio-8650, 2001 WL 1525324. For an invitee, on the other hand, the landowner must exercise ordinary care to protect him by maintaining the premises in a safe condition. This duty applies to everything that threatens the invitee with an unreasonable risk of harm, including latent dangers that are reasonably ascertainable. The landowner must not only use care to warn of latent dangers of which he is aware but must also inspect the premises for possible unknown dangerous conditions and protect the invitee from foreseeable dangers. *Hann v. Roush*, 4th Dist. No. 00CA55, 2001-Ohio-2614, 2001 WL 1396663.

{¶ 28} These traditional common-law distinctions, however, have little significance subsequent to the Ohio Supreme Court's decision in *Shump v. First Continental–Robinwood Assoc.* (1994), 71 Ohio St.3d 414, 644 N.E.2d 291. There, the estate of a woman who perished in a townhouse fire instituted a wrongful death action against the townhouse's landlord. The lawsuit alleged that the victim, a social guest of one of the landlord's tenants, died because the landlord failed to install smoke detectors on both floors of the townhouse as required by local ordinance. The trial court granted the landlord's motion for summary judgment and the matter eventually ended up before the Ohio Supreme Court, which concluded that summary judgment was improper. Specifically, the court held that "[a] landlord owes the same duties to persons lawfully upon the leased premises as the landlord owes to the tenant." Id. at 419, 644 N.E.2d 291. In reaching this decision, the court also resolved that the statutory duties imposed upon the landlord with respect to his tenant as set forth under R.C. 5321.04

extend to anyone else lawfully upon the leased premises. Id. at 420, 644 N.E.2d 291.

{¶ 29} The incident in question here occurred on the driveway outside the rear entrance and exit of one of the buildings at appellee's apartment complex. R.C. 5321.04(A)(3) explicitly obliges a landlord to maintain all common areas of the premises in a safe and sanitary condition. Accordingly, since the complex's driveway was obviously a common area of the premises, appellee owed a duty to appellant, as one lawfully on the premises, to keep the driveway "safe and sanitary." That said, it is equally clear that the fact that appellant caught her high heel in the drain and fell does not, by itself, mean that appellee breached its statutory obligation under the statute.

{¶ 30} To survive summary judgment, appellant needed to prove not only the existence of a duty but the existence of a factual dispute with respect to whether the condition of appellee's driveway rendered that particular common area unsafe or unsanitary in violation of R.C. 5321.04(A)(3). In her effort to do so, appellant directs this court to the driveway's sewer grate and the fact that the complex's exterior was poorly illuminated on the night she sustained injury. According to appellant, because the rear exterior of appellee's complex was poorly lit, she was unable to see the sewer grate and never had a chance to avoid the alleged danger.

{¶ 31} An injury is not actionable unless it can be foreseen or reasonably anticipated as the probable result of an act of negligence. *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 287, 21 O.O.3d 177, 423 N.E.2d 467. An act is foreseeable if a reasonably prudent person, under the same or similar circumstance, would have anticipated the plaintiff's injury as a result of his actions. *Commerce & Industry Ins. Co. v. Toledo* (1989), 45 Ohio St.3d 96, 98, 543 N.E.2d 1188.

{¶ 32} Admittedly, the record reflects significant dispute surrounding whether the apartment complex's exterior was properly illuminated on the night of the incident. Appellant recalls that there were no lights around the building. (Appellant's Depo., Sept. 14, 2000, at 37; Affidavit of Plaintiff, July 3, 2001, paragraph 3.) William Porteous, who lived at the complex, characterized the exterior lighting as adequate. (William Porteous' Depo., March 12, 2000, at 21.) James Miller, who was in charge of the lighting, testified that all of the exterior lights were working that night. (James Miller's Depo., March 12, 2000, at 6, 8, 11.)

{¶ 33} Since this matter is before this court on appeal from a decision to grant summary judgment, the record is properly reviewed in a light most favorable to appellant. Thus, we will assume that the complex's exterior was poorly lit, as appellant claims. Accordingly, the question is whether appellant's injury on the sewer grate was foreseeable given poor outside lighting. In

*Jeswald v. Hutt* (1968), 15 Ohio St.2d 224, 44 O.O.2d 196, 239 N.E.2d 37, the Supreme Court held that "[o]ne who maintains a private motor vehicle parking area, for the accommodation of those he serves in a professional or business way, is generally under no legal obligation to illuminate the same at night." Id. at paragraph one of syllabus.

{¶ 34} Appellant complains that reliance on *Jeswald* is inappropriate in the instant case because *Jeswald* addressed only the duties a landlord owes to invitees in a business, not residential, context. The Supreme Court, however, has held that this is a distinction without a difference. See *LaCourse v. Fleitz* (1986), 28 Ohio St.3d 209, 211, 28 OBR 294, 503 N.E.2d 159. *LaCourse* addressed whether and the extent to which a residential landlord owed a duty to remove natural accumulations of ice and snow from common areas, and resolved that there was no such duty unless it was specifically created by lease. In so concluding, however, the court also resolved that a residential landlord's duties to invitees were no different from those business owners owed to business invitees. Id.

{¶ 35} The court explained in *LaCourse* its reasoning as follows:

{¶ 36} "It may be argued that a landlord accepts the benefits of paying tenants and should therefore be charged with the responsibility of taking reasonable steps to ensure their safety. It could be said that a landlord is in the better position to take action to clear accumulated snow and ice, since he owns the property and has the easiest access to all common areas. However, these arguments are no less applicable to business owners. They invite business visitors to enter the premises in hopes of receiving a benefit from them. They are in the best position to keep their property free of accumulated snow and ice. We have declined to elevate these arguments over the more compelling reasoning that the business owner is justified in assuming that his visitors are perceptive enough to observe the conditions and prudent enough to proceed with caution. Moreover, the accumulation of ice and snow is not chargeable to the owner, who did not create it. This natural and unconcealed condition is distinguishable from other conditions, such as a loose stair railing or open elevator shaft, which are often not obvious to the user." Id.

{¶ 37} The key then, according to the Ohio Supreme Court, is not which party is in a better position to address the purportedly dangerous condition, but whether the dangerous condition was more apparent to the landlord than the invitee. The court concluded that since the danger of slipping on ice and snow is every bit as obvious to the invitee as it was to the landlord, R.C. 5321.04(A)(3) should not be construed to impose a duty on the landlord for its removal.

{¶ 38} In light of the *Jeswald* and *LaCourse* decisions, we can only hold that there is a similar bar on any duty one otherwise might expect a landlord to have

with respect to the condition of darkness. Even more than accumulations of ice and snow, darkness is a completely predictable event that is not of the landlord's making. In *Bionci v. Boardman Local Schools,* 7th Dist. Nos. 00 CA 6 and 00 CA 83, 2001-Ohio-3197, 2001 WL 1740011, this court held that in light of *Jeswald,* supra, the trial court committed reversible error when it refused to instruct the jury that "[d]arkness is always a warning of danger, and for one's own protection, it may not be disregarded"; and that "[a] landowner who maintains a parking area for the accommodation of invitees is under no legal duty to illuminate the area at night." Id.

{¶ 39} This court has also held that inadequate lighting on its own is not a basis for liability because "[d]arkness is always a warning of danger, and for one's own protection may not be disregarded." *Nemit v. St. Elizabeth Hosp. Med. Ctr.,* 7th Dist. No. 99–CA–202, 2001-Ohio-3315, 2001 WL 741544, citing *Jeswald,* 15 Ohio St.2d 224 at 227, 44 O.O.2d 196, 239 N.E.2d 37. In *Nemit,* we affirmed summary judgment against a plaintiff who slipped and fell while crossing the defendant's parking lot one night on her way to a guest house she rented on defendant's property.

{¶ 40} Similarly, in *Schneider v. Associated Estates Realty* (Mar. 4, 1999), 8th Dist. No. 73981, 1999 WL 126942, another reviewing court held that a landlord has no common-law duty to illuminate a parking lot. In *Schneider,* the plaintiff filed suit against his landlord, alleging that he sustained injury when he tripped over a recessed drainage grate as he cut across a grassy common area to get to the parking lot and his car. As in the instant case, the incident in *Schneider* occurred during the evening in an area of the premises that was apparently poorly illuminated. The plaintiff claimed that partly because of the poor illumination, the grate on which he tripped was not visible. In affirming the trial court's decision to grant summary judgment in favor of the landlord, the court remarked as follows:

{¶ 41} "As to darkness being a factor in a trip-and-fall situation on the premises of a building owner, it must be remembered that darkness itself constitutes a sign of danger and the person who disregards a dark condition does so at his or her own peril." Id. at 3, citing *Jeswald* at paragraph three of the syllabus, and *Brandimarte v. Packard* (May 18, 1995), 8th Dist. No. 67872, 1995 WL 307751.

{¶ 42} It was after 10:00 p.m. when appellant arrived at the Salem Heritage apartment complex. (Appellant's Depo., Dec. 14, 2000, at 23.) Appellant testified that it was dark outside. (Appellant's Depo., Dec. 14, 2000, at 24.) Appellant characterized the conditions outside her friend's building that night as "pitch-dark." (Appellant's Depo., Dec. 14, 2000, at 23.) Such a situation presents an obvious danger from which appellant should have taken steps to protect herself.

Instead, she made the trip in and out of the car wearing narrow high-heeled shoes. She stumbled forward when one of her heels caught in a driveway sewer grate. (Appellant's Depo., Dec. 14, 2000, at 29–30.) The following colloquy from appellant's deposition is instructive:

{¶ 43} "Q. * * * [Y]ou got out and walked across the grassy area in the dark?

{¶ 44} "A. Yes.

{¶ 45} "Q. And walked across that driveway in the dark?

{¶ 46} "A. Yes.

{¶ 47} "Q. Even though you knew it was dangerous?

{¶ 48} "A. Yes, I didn't think I was going to fall.

{¶ 49} "Q. Well, you knew it was dangerous, that's what you told me, isn't that what you just said?

{¶ 50} "A. I did say it, but—

{¶ 51} "Q. Well, isn't it true—you're just telling me the truth, aren't you?

{¶ 52} "A. I don't know how to explain that. But at the time I wasn't thinking I'm going to fall.

{¶ 53} "Q. I know you weren't thinking you were going to fall. You just told me you knew there was no lights in that building, it was dangerous?

{¶ 54} "A. That part is true, yes.

{¶ 55} "Q. And you knew it that night, didn't you?

{¶ 56} "A. I guess I did.

{¶ 57} "Q. All right. And you got out of the car and you walked in that area even though it was dark and even though it was dangerous; that's true also isn't it?

{¶ 58} "A. That is true." (Appellant's Depo., Dec. 14, 2000, at 52.)

{¶ 59} As this passage illustrates, the danger here was evident to appellant even before she entered the building. Accordingly, her, "knowledge of the condition removes the sting of unreasonableness from any danger that lies in it, and obviousness may be relied on to supply knowledge." *Wicichowski v. Gladieux V. Ent., Inc.* (1988), 54 Ohio App.3d 177, 179, 561 N.E.2d 1012, citing *Sidle v. Humphrey* (1968), 13 Ohio St.2d 45, 48, 42 O.O.2d 96, 233 N.E.2d 589, quoting 2 Harper & James, Law of Torts (1956) 1491 (the poor condition of the stairs presented an open and obvious danger to plaintiff that foreclosed property owner liability).

{¶ 60} Accordingly, notwithstanding the fact that the trial court granted summary judgment based on the erroneous conclusion that appellant was a

licensee on appellee's property, the decision to grant summary judgment in this case was proper. After reviewing the record de novo, this court is forced to conclude that there is no genuine issue of material fact that the danger presented in this case was any more foreseeable to appellee than it was to appellant. Based on the record and given the obvious danger that darkness presents, there is nothing on which to hold appellee liable to appellant for the injury she sustained when she fell on appellee's property.

{¶ 61} Since we must overrule appellant's three assignments of error, this court affirms the judgment entered by the Columbiana County Court of Common Pleas.

*Judgment affirmed.*

GENE DONOFRIO and DeGENARO, JJ., concur.