[Cite as *Carter v. Forestview Terrace, L.L.C.*, 2016-Ohio-5229.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

## JOURNAL ENTRY AND OPINION
## No. 103165

---

# EVELYN CARTER

### PLAINTIFF-APPELLANT

vs.

# FORESTVIEW TERRACE L.L.C., ET AL.

### DEFENDANTS-APPELLEES

---

## JUDGMENT:
## REVERSED AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-14-828690

**BEFORE:**  McCormack, J., Keough, P.J., and E.A. Gallagher, J.

**RELEASED AND JOURNALIZED:**  August 4, 2016

**ATTORNEYS FOR APPELLANT**

Leonard Ehrenreich
Arthur E. Dombek
Ehrenreich & Associates
1130 Leader Building
526 Superior Ave.
Cleveland, OH 44114


**ATTORNEYS FOR APPELLEE**

Adam E. Carr
The Carr Law Office, L.L.C.
5824 Akron-Cleveland Rd., Suite A
Hudson, OH 44236

Eric K. Grinnell
Smith Marshall, L.L.P.
5824 Akron-Cleveland Road, Suite A
Hudson, OH 44236

TIM McCORMACK, J.:

**{¶1}** Plaintiff-appellant Evelyn Carter appeals from a judgment of the Cuyahoga County Court of Common Pleas that granted summary judgment in favor of Carter's landlord, defendant-appellee Forestview Terrace, L.L.C. ("Forestview"). Carter was injured when she fell down the stairwell of a common area that lead to her basement apartment. For the following reasons, we reverse and remand.

Procedural History and Substantive Facts

**{¶2}** On June 25, 2012, Evelyn Carter was a resident of the apartment complex owned and operated by Forestview.[1] Damage had been caused by a fire that occurred at this apartment complex less than one week prior. Forestview hired Brennan Electric to perform electrical repairs at the complex. According to Forestview, it was necessary for Brennan Electric to shut down all electrical power to the apartment complex in order to perform the necessary repairs. On June 25, Brennan Electric did, indeed, shut off the power to the building in which Carter resided.

**{¶3}** On this same day, Carter had been visiting with her son, who resided in a different apartment building in the same complex. Carter testified that it was a "beautiful, sunshiny day." When she left her building to visit her son in his building, the hall in her building was well lit and "everything was as it always had been." She stated

---

[1] The parties have stipulated that Forestview Terrace, L.L.C. was in receivership at the time of the alleged incident, and Foresite Realty Partners was the receiver. For purposes of this appeal, we refer to the landlord as Forestview.

that while she visited her son in his building, the electricity was operating normally, as well.

**{¶4}** After visiting with her son, she made her way outside and returned to her apartment building. Upon returning to her building, she opened the door at the top of the stairwell from the outside that leads to her basement apartment. Carter testified that when she opened the door, the sun was shining very brightly, "illuminating the stairwell." She noticed, however, that the stairwell was not "quite as bright as it should have been," and she thought that the light "is going out down there," explaining that "lights go out, they get dim." She made a mental note to advise the management company that the light "is getting ready to come out."

**{¶5}** Realizing the stairwell was not as bright as it was when she initially left her apartment, Carter proceeded down the stairs more cautiously. She stated that she looked down at the stairs and was holding onto the handrails. She entered the stairwell and began to descend the stairs when the door automatically closed behind her, leaving her in total darkness. At this point, Carter lost her footing and fell down the stairs.

**{¶6}** She testified as follows, relating to her fall:

> I think I was on about the third stair before the door started closing and the light started getting dimmer and dimmer, okay? And by the time I got to the point where the door closed completely, I was falling in the pitch black darkness. I'm like, oh, my God. The light is out. It's not going out, it's out. By that time, I'm hitting everything on my path on the way down * * *.

> * * *

> By the time I realized * * * anything was really, really wrong, I was falling in the pitch black darkness. The door shutter had closed the door real fast and I was falling in the pitch black darkness. I was already descending the stairs. It wasn't like I stepped down the first stairs * * *.

Carter further explained that "there [was] no way for me to know if there [was] anything wrong inside my stairwell." She stated that once the door had closed automatically, there was no sunlight entering the stairwell and it was pitch black, and "once the stairwell turned dark, I was tumbling down the stairwell in the pitch black darkness." She testified that she was not aware it was dark until the door "closed down the sunlight and shut the door."

**{¶7}** As a result of her fall, Carter suffered injuries to her wrists, back, neck, shoulders, ankles, and knees. Further, she stated that her headaches increased.

**{¶8}** John T. Skerritt, Forestview's maintenance employee, was working the day Carter fell. He testified that he was aware that Brennan Electric would be performing repairs and that such repairs necessitated turning off the electricity during the day. He also testified that all residents were warned that Brennan Electric would be turning off the electricity and all power that day. He stated that he "believe[d]" he posted signs indicating the same.

**{¶9}** Carter, however, stated that she was not aware of the electricity being shut off that day in her apartment building. Further, she did not see anyone working in her hallway, and she was not aware that anyone was working on the electricity that day. Carter testified that, typically, if there was an issue with the building, management would put a note on the door advising the tenants of the issue; however, she stated that there

were no notices on the door regarding the electricity being turned off. One of the electricians on site, William Yunker, testified that he did not see any signs warning residents of the power shut-off.

{¶10} Carter filed a complaint against Forestview and Brennan Electric for damages. The parties conducted the depositions of Carter and various employees or representatives of Brennan Electric. Thereafter, Carter settled her claims with Brennan Electric. On February 20, 2015, Forestview moved for summary judgment, which was granted by the trial court.

{¶11} Carter now appeals from the judgment of the trial court and assigns one error for our review:

> The trial court erred in sustaining defendant-appellee Forestview's motion for summary judgment, thereby violating Civ.R. 56(C), in that there remain genuine issues of material fact.

Summary Judgment

{¶12} Summary judgment is appropriate when: (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) after construing the evidence most favorably for the party against whom the motion is made, reasonable minds can reach only a conclusion that is adverse to the nonmoving party. Civ.R. 56(C). Once a moving party satisfies its burden, the nonmoving party may not rest upon the mere allegations or denials of the moving party's pleadings; rather, it has a reciprocal burden of setting forth specific facts demonstrating that there is a genuine

triable issue. *State ex rel. Zimmerman v. Tompkins*, 75 Ohio St.3d 447, 449, 663 N.E.2d 639 (1996).

{¶13} We review the trial court's judgment de novo. *Telecom Acquisition Corp. I v. Lucic Ents.*, 8th Dist. Cuyahoga No. 102119, 2016-Ohio-1466*, ¶ 86*, citing *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).

Law and Analysis

{¶14}  Carter claims that Forestview was negligent in failing to maintain the stairwell in a safe condition and in failing to warn her of the dangerous condition of the stairwell, and as a result, she sustained serious injuries.  Forestview argues that the condition of the stairwell was open and obvious, and therefore, it had no duty to warn Carter that the light was out.  Regardless, Forestview contends that it did, in fact, provide notice to all tenants that the power would be shut off the day in question. Finally, Forestview claims that Carter's injuries resulted from her own actions when she proceeded into the dark stairwell.

{¶15} In order to prevail in a common law negligence action, a party must show (1) a duty owed, (2) a breach of that duty, and (3) an injury proximately resulting from that breach.  *Mann v. Northgate Investors, L.L.C.*, 2012-Ohio-2871, 973 N.E.2d 772, ¶ 8 (10th Dist.)  *("Mann I")*, citing *Robinson v. Bates*, 112 Ohio St.3d 17, 2006-Ohio-6362, 857 N.E.2d 1195, ¶ 21.  At common law, a landlord is charged with a general duty to exercise reasonable care to keep the premises retained in his control for the common use of his tenants in a reasonably safe condition.  *Mullins v. Grosz*, 10th Dist. Franklin No.

10AP-23, 2010-Ohio-3844, ¶ 23, citing *Shroades v. Rental Homes, Inc.*, 68 Ohio St.2d 20, 427 N.E.2d 774 (1981).

{¶16} The landlord's duty also includes warning a tenant of latent or concealed defects and defective premises under the landlord's control. *Person-Thomas v. Quilliams-Noble Apts., L.L.C.*, 2015-Ohio-4277, 45 N.E.3d 654, ¶ 11 (8th Dist.), citing *Shump v. First Continental-Robinwood Assocs.*, 71 Ohio St.3d 414, 644 N.E.2d 291 (1994). And where the matter involves a question of the existence of a hazardous condition or defect, actual or constructive notice of the hazard or defect is a prerequisite to a landlord's duty. *Waugh v. Lynch*, 8th Dist. Cuyahoga No. 100432, 2014-Ohio-1087, ¶ 10; *Heckert v. Patrick*, 15 Ohio St.3d 402, 405, 473 N.E.2d 1204 (1984).

{¶17} The duty of reasonable care to maintain the premises, however, is obviated by the "open and obvious" doctrine. *Mann I* at ¶ 9. This doctrine espouses the rule that where a danger is "open and obvious," a landowner owes no duty of care to individuals lawfully on the premises. *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, ¶ 14, citing *Sidle v. Humphrey*, 13 Ohio St.2d 45, 233 N.E.2d 589 (1968). The rationale for this doctrine is that the open and obvious nature of the hazard itself serves as a warning and one may undertake appropriate measures to protect himself or herself against it. *Mann I*, citing *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 644, 597 N.E.2d 504 (1992). "The fact that a plaintiff was unreasonable in choosing to encounter the danger is not what relieves the property owner of liability. Rather, it is the fact that the condition itself is so obvious that it

absolves the property owner from taking any further action to protect the plaintiff." *Armstrong* at ¶ 13.

{¶18} Attendant circumstances, however, can create an exception to the open and obvious doctrine and render summary judgment inappropriate. *Johnson v. Regal Cinemas, Inc.*, 8th Dist. Cuyahoga No. 93775, 2010-Ohio-1761, ¶ 23. An "attendant circumstance" is "any significant distraction that would divert the attention of a reasonable person in the same situation and thereby reduce the amount of care an ordinary person would exercise to avoid an otherwise open and obvious hazard." *Haller v. Meijer, Inc.*, 10th Dist. Franklin No. 11AP-290, 2012-Ohio-670, ¶ 10; *Daher v. Bally's Total Fitness*, 11th Dist. Lake No. 2014-L-061, 2015-Ohio-953, ¶ 27 (finding that the "attendant circumstances" of a slip and fall may create a material issue of fact as to whether the danger was open and obvious). Such attendant circumstances include "'all facts relating to the event, such as time, place, surroundings or background and the conditions normally existing that would unreasonably increase the normal risk of a harmful result of the event.'" *Johnson*, quoting *Klauss v. Marc Glassman, Inc.*, 8th Dist. Cuyahoga No. 84799, 2005-Ohio-1306, ¶ 20.

{¶19} Where darkness is a factor in a trip-and-fall situation, the darkness itself may be the hazardous condition that serves as the warning of danger, and the person who disregards the dark condition does so at his or her own risk. *Mann I* at ¶ 23, citing *Mowery v. Shoaf*, 148 Ohio App.3d 403, 2002-Ohio-3006, 773 N.E.2d 1053 (7th Dist.); *Schneider v. Associated Estates Realty*, 8th Dist. Cuyahoga No. 73981, 1999 Ohio App.

LEXIS 818, 8 (Mar. 4, 1999). The "step-in-the dark" rule relates to the proximate cause element of negligence and holds that "one who, from a lighted area, intentionally steps into total darkness, without knowledge, information, or investigation as to what the darkness might conceal, is guilty of contributory negligence as a matter of law." *Posin v. A.B.C. Motor Court Hotel, Inc.*, 45 Ohio St.2d 271, 276, 344 N.E.2d 334 (1976); *Johnson* at ¶ 30 (stating the rule mandates liability upon an individual who intentionally steps from a lighted area to total darkness, without investigating the possible dangers concealed by the darkness); *Hissong v. Miller*, 186 Ohio App.3d 345, 2010-Ohio-961, 927 N.E.2d 1161, ¶ 37 (2d Dist.) (noting that unlike the "open and obvious" doctrine that relates to the landlord's duty, the step-in-the-dark rule relates to the cause of the plaintiff's injury).

{¶20} This rule applies only in cases of "total darkness" and not where testimony indicates some degree of illumination. *Rothfuss v. Hamilton Masonic Temple Co.*, 34 Ohio St.2d 176, 183-186, 297 N.E.2d 105 (1973). Further, the rule applies to cases involving natural darkness in an outside setting as well as "artificial darkness" that occurs inside a building. *See Mann I* at ¶ 24.

{¶21} The step-in-the-dark rule generally infers that the injured party lacked ordinary care in proceeding in the dark. However, the rule recognizes that sometimes "'a person's step into the darkness is perfectly reasonable.'" *Tomasko v. Sohnly*, 5th Dist. Delaware No.15-CAE-10-0078, 2016-Ohio-2698, ¶ 29, quoting *Hissong* at ¶ 39. "It cannot be said that a person is guilty of negligence as a matter of law under all

circumstances when such person enters a dark place where his sense of sight alone does not enable him to see what is before him." *Chardon Lakes Inn Co. v. MacBride*, 56 Ohio App. 40, 46, 10 N.E.2d 9 (11th Dist.1937). For example, a person can be lulled into a false sense of safety under certain circumstances, such as the existence of some lighting or adherence to the instructions of another. *See Rothfuss* (light conditions in the parking lot); *MacBride* (following someone's instructions).

{¶22} Where there is conflicting evidence or a question regarding the credibility of witnesses, there can be no inference of lack of ordinary care:

> If conflicting evidence exists as to the intentional nature of the step into the dark, the lighting conditions and degree of darkness, the nature and appearance of the premises, or other circumstances exist tending to disprove a voluntary, deliberate step into unknown darkness, then clearly an inference of contributory negligence does not arise. Evidence of this nature presents a factual question for determination by the jury.

*Posin*, 45 Ohio St.2d at 276, 344 N.E.2d 334, citing *Rothfuss*; *Chardon Lakes Inn Co.* Therefore, the question becomes whether the injured person unreasonably stepped into the darkness, or whether the injured person acted negligently in her encounter with the darkness, and whether, for summary judgment purposes, reasonable minds can answer this question differently.

{¶23} The Landlord-Tenant Act, R.C. Chapter 5321, enacted in 1974, codifies Ohio's law regarding residential premises and governs the rights and duties of tenants and landlords. *Mann v. Northgate Investors, L.L.C.*, 138 Ohio St.3d 175, 2014-Ohio-455, 5 N.E.3d 594, ¶ 8 *("Mann II")*. This statute was created for the purpose of providing tenants with greater rights:

> "In light of the public policy and drastic changes made by the statutory scheme of R. C. Chapter 5321, we hold that a landlord is liable for injuries, sustained on the demised residential premises, which are proximately caused by the landlord's failure to fulfill the duties imposed by R. C. 5321.04. We conclude that the General Assembly intended both to provide tenants with greater rights and to negate the previous tort immunities for landlords."

*Mann II*, quoting *Shroades*, 68 Ohio St.2d at 25, 427 N.E.2d. As a result of the enactment, a landlord can now be liable for injuries resulting from the landlord's failure to meet the obligations imposed by R.C. 5321.04. *Mann II* at ¶ 11.

{¶24} Specifically, R.C. 5321.04(A) outlines the landlord's duty as follows:

(1) Comply with the requirements of all applicable building, housing, health, and safety codes that materially affect health and safety;

(2) Make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition;

(3) Keep all common areas of the premises in a safe and sanitary condition;

(4) Maintain in good and safe working order and condition all electrical, plumbing, sanitary, heating, ventilating, and air conditioning fixtures and appliances, and elevators, supplied or required to be supplied by the landlord * * *.

{¶25} A landlord's violation of the duties imposed by R.C. 5321.04 constitutes negligence per se. *Person-Thomas*, 2015-Ohio-4277, 45 N.E.3d 654, at ¶ 14, citing *Robinson,* 112 Ohio St.3d 17, 2006-Ohio-6362, 857 N.E.2d 1195, at ¶ 23; *Sikora v. Wenzel*, 88 Ohio St.3d 493, 2000-Ohio-406, 727 N.E.2d 1277; *see also Mann II*. A

finding of negligence per se, however, does not result in strict liability, as application of negligence per se merely establishes that the defendant breached a duty owed to plaintiff. *Mann I* at ¶ 10. The plaintiff must further establish proximate cause for the injuries sustained. *Mann II* at ¶ 12, citing *Shroades* at 25.

{¶26} Additionally, the plaintiff must demonstrate that "'the landlord received notice of the defective condition of the rental premises, that the landlord knew of the defect, or that the tenant had made reasonable, but unsuccessful, attempts to notify the landlord.'" *Mann II* at ¶ 12, quoting *Shroades*, 68 Ohio St.2d at 26, 427 N.E.2d. A landlord will be excused from liability under this statute where he or she "neither knew nor should have known of the factual circumstances that caused the violation." *Sikora* at the syllabus.

{¶27} While the "open and obvious" doctrine eliminates the landlord's common law duty of ordinary care to maintain the premises in a reasonably safe condition and to warn of latent defects, this doctrine does not relieve the landlord's duty under the statute. *Mann I* at ¶ 11, citing *Robinson* at ¶ 25. "If a landlord breaches a duty under R.C. 5321.04, the 'open and obvious' doctrine will not protect the landlord from liability." *Id.* However, where no statutory breach occurred, the "open and obvious" doctrine remains a bar to a common law negligence claim. *Mann I*, citing *Ryder v. McGlone's Rentals*, 3d Dist. Crawford No. 3-09-02, 2009-Ohio-2820, ¶ 17.

{¶28} Here, under common law and under the statute, as Carter's landlord, Forestview had a duty to maintain the premises in a reasonably safe condition. To the

extent that the stairwell's unlighted condition was hazardous or concealed, Forestview had a duty to warn its tenants of the hazard. There is no dispute that Forestview was aware that Brennan Electric would be performing repairs and that such repairs necessitated turning off the electricity on the day that Carter fell. The question becomes whether Forestview, in fact, informed the tenants that the power would be turned off, and if they did not so inform them, whether they thus created a hazardous condition. Although Forestview's maintenance employee testified that he posted signs warning tenants of the repairs, Carter testified that she was not aware that the power would be off that day, nor did she see any signs posting that warning. Additionally, an electrician with Brennan Electric, who was at the site on the day in question, also testified that he saw no warning signs posted on the apartment building that day. Thus, there is a genuine question of material fact regarding whether Forestview did, in fact, warn Carter that the power would be turned off on June 25.

{¶29} Forestview asserts that regardless of the notice Carter may or may not have received through posted signs, the dark condition of the stairwell was open and obvious and the darkness in the hallway served as her notice of the danger. In support, Forestview claims that Carter observed that the light in the stairwell had gone out and she proceeded down the dark stairs regardless of the inherent danger presented.

{¶30} Carter's testimony, however, contrasts with and does not support Forestview's position. Carter testified that it was a "bright, sunshiny day" on June 25, and when she opened the door to her apartment building, the bright sun illuminated the

stairwell. She noticed that the stairwell was "not quite as bright as it should have been" and she thought that the light "was going out" or "getting ready to come out." She further testified that there was no indication of darkness until the door closed and she was on the third step. At that point, she had already begun to fall. Carter testified that it was not until she began to fall, when she realized that "the light is out, not going out." The testimony therefore demonstrates a genuine issue of material fact as to whether the condition of the stairwell itself was so obvious that it absolved Forestview from taking any further action to protect Carter, i.e. warning Carter of its existence. *Armstrong*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, at ¶ 14.

{¶31} Likewise, there is a genuine issue of material fact as to whether Carter's own step in the dark was the proximate cause of her injuries. As stated previously, the step-in-the-dark rule provides that "one who, from a lighted area, intentionally steps into total darkness, without knowledge, information, or investigation as to what the darkness might conceal," is negligent as a matter of law. *Posin,* 45 Ohio St.2d at 276, 344 N.E.2d 334.

{¶32} Here, Carter testified that when she opened the door and began to descend the stairs, the stairwell was not dark. Rather, it was illuminated by the sunshine and the dimming light. Carter explained that because she noticed the stairwell light was not as bright as usual, she proceeded cautiously down the stairs to her apartment, looking down at the steps and holding onto the handrails. However, as Carter testified, she was on the third step when the door suddenly closed, and "I was falling in the pitch black darkness."

As Carter stated, there was no indication of darkness until she had already reached the third step and the door automatically closed. And at that point, she was falling down the stairs. Arguably, her last step was the fall, as the darkness surrounded her instantaneously.

{¶33} In construing the evidence in Carter's favor, we find that reasonable minds can conclude that it was not a voluntary, deliberate step into unknown darkness that caused her fall. Rather, the sudden darkness that had surprised Carter mid-step caused her to fall. *See Mann I.*

{¶34} In light of the foregoing, we find there is a genuine issue of material fact regarding whether the darkened stairwell was an open and obvious condition that obviated the landlord's duty to warn its tenant, and if not, whether the landlord provided sufficient notice of the dangerous condition. Further, we find there is a genuine issue of material fact as to whether Carter's own actions caused her injuries. Summary judgment was therefore improper.

{¶35} Carter's assignment of error is sustained.

{¶36} Judgment reversed. This cause is remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellant recover of said appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIM McCORMACK, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
EILEEN A. GALLAGHER, J., CONCUR