THE STATE, EX REL. CHALFIN ET AL., APPELLEES, v. GLICK ET AL., APPELLANTS.*

(No. 458—Decided April 14, 1960.)

*Mr. Paul N. McKinley*, prosecuting attorney, and *Mr. C. A. Faulkner*, for appellees.

*Mr. Joseph F. Dush*, for appellants.

---

*Judgment affirmed, 172 Ohio St., 249.

MIDDLETON, J. This cause is here on appeal from the Common Pleas Court on questions of law and fact. The relators for their cause of action against the respondents state that the respondents, in their respective capacities as school authorities, teachers and parents, are in charge of and are responsible for the operation of private schools in Hardin County for the education of children of compulsory school age whose parents are of the Mennonite or Old Order of Amish faith, and that they neglect, fail and refuse to provide instruction to the youth of Hardin County attending such schools of the kind, amount, for the length of time, both as to school year and age of pupils, of the character of instruction and in the subject matter, in accordance with the minimum standards of education required by the laws of Ohio and the regulations of the board of education of the state of Ohio pursuant thereto and refuse to permit the children to attend the public schools of the district. Then follows in their petition specifications of the charges wherein the respondents allegedly have failed to comply with the minimum standards of education required by the laws of Ohio.

Relators aver that the respondents have entered into a combination and conspiracy to interfere with the duty of parents to provide their children with the kind and degree of education the public has determined to be necessary to the welfare of the citizens of this state and the protection and preservation of the American form of government.

Relators claim further that the continued operation of such schools in the manner and for the purpose operated is unlawful and a public nuisance and an interference with the interest of the public welfare, convenience and morals as expressed by the Constitution of the state and the legislative enactments pursuant thereto.

Relators claim further that the respondents will continue in such course of conduct, combination and conspiracy to subvert such youths in teaching them active disregard and disrespect for the laws of the state, unless restrained therefrom by this court, to the injury of the public and of such youths, that the relators have no adequate remedy at law and that the public welfare and the welfare of the children will suffer irreparable injury if such course of conduct is permitted to continue.

The prayer of the petition is for an injunction to restrain the respondents from operating such private schools which do not comply with the minimum standards of education required by the laws of the state of Ohio, and that the respondent parents be restrained from causing or permitting their children of compulsory school age to attend such private schools unless and until those schools furnish instruction which complies with the laws of Ohio.

The Legislature of Ohio has enacted statutes governing school attendance and to provide compulsory education of the children of the state. The questions involved herein require a consideration of the following statutes:

Section 3321.02, Revised Code, provides as follows:

"Every child actually resident in the state shall be amenable to the laws relating to compulsory education, and neither he nor the person in charge of him shall be excused from the operation of said sections or the penalties under them on the ground that the child's residence is seasonal, that the parent of the child is a resident of another state, or that the child has attended school for the legal period in another state."

Section 3321.04, Revised Code, provides in part as follows:

"Every parent, guardian, or other person having charge of any child of compulsory school age who is not employed under an age and schooling certificate and who has not been determined to be incapable of profiting substantially by further instruction, must send such child to a school, which conforms to the minimum standards prescribed by the State Board of Education, for the full time the school attended is in session, which shall not be for less than thirty-two weeks per school year. Such attendance must begin within the first week of the school term or within one week of the date on which the child begins to reside in the district or within one week after his withdrawal from employment."

Section 3321.07, Revised Code, provides in part as follows:

"If any child attends upon instruction elsewhere than in a public school such instruction shall be in a school which conforms to the minimum standards prescribed by the State Board of Education. The hours and term of attendance exacted shall be equivalent to the hours and term of attendance required of children in the public schools of the district. * * *"

The first and controlling question for determination by the court is whether upon the state of facts revealed by the record a court of equity has jurisdiction to enjoin the respondents from continuing to operate the schools complained of and to send their children of compulsory school age to such schools. The basis for relator's claim for equitable relief by way of injunction, is that the respondents are maintaining a public nuisance for which there is no adequate remedy at law.

There are many definitions for the term nuisance. All vary according to the facts existing in the particular case. It seems that a single definition which fits all cases is impossible. There are, however, certain basic conditions which must exist in every case and which help in arriving at a determination of whether the acts complained of constitute a nuisance.

"Although the term 'nuisance' has been regarded as incapable of precise definition so as to fit all cases, it has also been held to be a term with a well defined legal meaning, and in legal phraseology applies to that class of wrongs which arise from the unreasonable, unwarrantable, or unlawful use by a person of his own property, real or personal, or from his own improper, indecent, or unlawful personal conduct, working an obstruction or injury to a right of another, or of the public, and producing material annoyance, inconvenience, discomfort, or hurt." 66 Corpus Juris Secundum, 727, Nuisances, Section 1.

"Nuisances are classified as public or private. The difference between a public and a private nuisance is that the former affects the public at large or such of them as may come in contact with it, while the latter affects the individual or a limited number of individuals only. The difference does not consist in any difference in the nature or character of the thing itself, but in the extent or scope of its injurious effect. The constituents and definitions of a nuisance and the quality of the wrong are the same whether the nuisance is public or private, and the jurisdiction of the courts over both classes of nuisances rests upon the same principles and goes to the same extent. * * *" 39 American Jurisprudence, 284, Nuisances, Section 7.

"A public nuisance has been defined as the doing of or the failure to do something that injuriously affects the safety, health, or morals of the public, or works some substantial an-

noyance, inconvenience, or injury to the public * * *." 39 American Jurisprudence, 285, Nuisances, Section 8.

"Injunction against a nuisance does not issue as of course or in every case, and each case will be decided on its particular facts. Equity jurisdiction, in such cases, is exercised sparingly, reluctantly, and cautiously.

"* * * *

"There must be both injury and damage in order to justify an injunction; but a person confronted with a nuisance and threatened with the destruction of his property does not have to await the actual infliction of damage to his property, but has the right, when the potential danger arises, to appeal to a court of equity for relief, if such appeal is seasonably made." 66 Corpus Juris Secundum, 870, 872, Nuisances, Section 111A.

"In order to justify the granting of equitable relief against a nuisance, there must be an actual, and, according to the decisions on the question, there must be a real, material, positive, substantial, serious, and permanent, or potentially permanent, injury, or an appreciable interference with the ordinary enjoyment of property, physically, or with the ordinary comfort, physically, of human existence * * *." 66 Corpus Juris Secundum, 872, Nuisances, Section 111B.

The legal right of the respondents to operate a nontax supported private school is not and can not be questioned, nor can it be questioned that the Constitution protects the respondents in their right to worship God according to the dictates of their own conscience and to teach in their church and in their schools the tenets of their faith. To constitute a nuisance, either public or private, the thing or act complained of as constituting a nuisance must either cause injury to the property of another, obstruct the reasonable use or enjoyment of his property or cause physical discomfort to him.

It is difficult to see how the operation of the nontax supported Amish school or the attendance of the children of that faith in such school can in any way cause injury to the public, nor can it be said the operation of such school injuriously affects the health, safety or morals of the public or works any injury to the public.

The Legislature has enacted statutes to govern the opera-

tion of both public and private schools and provided for the adoption of certain minimum standards of education to be complied with by both public and private schools. The laws also require parents, guardians or other persons in charge of a child to send such child to a public, private or parochial school which conforms to the requirements set forth by the Legislature. Statutes have been enacted setting forth penalties to be assessed against the parents or others in charge of the children for violation of the compulsory school laws. Sections 3321.38, 3321.99, and 4109.99, Revised Code. The last cited section prescribes additional penalties for the second and subsequent violations of the laws relating to compulsory education, to wit:

"(K) Whoever having been convicted of a violation of any law relating to compulsory education or the employment of minors again violates such law shall, unless a penalty for a second or subsequent violation of such law is specifically provided for, be fined for the second offense not less than twenty nor more than two hundred dollars or imprisoned not more than thirty days, or both; for each subsequent offense such person shall be fined not less than thirty nor more than five hundred dollars or imprisoned not more than sixty days, or both."

In 43 Corpus Juris Secundum, 762, Injunctions, Section 151, we find the following statement:

"Where the intervention of equity by injunction is warranted by the necessity of protection to civil rights or property interests and the inadequacy of a criminal prosecution to effect this purpose, the mere fact that a crime or statutory offense must be enjoined as incidental thereto will not operate to deprive the court of its jurisdiction. The power of equity to enjoin the doing of acts threatening irreparable injury to property rights is inherent and has been exercised by courts of chancery since their evolution as a distinct tribunal and this power cannot be divested because the performance of such acts may be a violation of the criminal law. The criminality of the act, it has been said, neither gives nor ousts jurisdiction in chancery."

Thus we find that injunction will issue to protect civil rights as set forth in the Bill of Rights and property rights notwithstanding the acts enjoined may also constitute crime. How-

ever, injunction will not issue to restrain criminal action unless necessary to protect such civil rights or property rights.

The violation of law in the instant case, if any, is not the *operation of the schools* under attack, nor in the *subjects taught* therein, nor the attendance of the children of respondents at *such school*, but the failure of the respondent parents to send their children to a school which *meets the standards of education* required by the compulsory education laws of the state. In a proper action this failure by the parents subjects them to the penalties provided for violation of the compulsory education and attendance laws of the state.

We find nothing in the statute which makes the operation of these Amish schools unlawful nor anything in the record to support the claim that these schools are injurious to the safety, health or morals of the public. The record does not support the claim that the respondents are maintaining a nuisance entitling relators to equitable relief.

As far as the record reveals there is nothing taught in the Amish schools which is unlawful or injurious to the public, and the record fails to support the claim of the relator that the children attending these schools are being taught active disregard or disrespect for the laws of the state. The fault lies in that these schools do not meet the minimum requirement of instruction prescribed by the state to qualify as private schools to which a parent is permitted to send his child under the compulsory attendance laws of the state, instead of sending such child to a public school.

Relators, to further support their claim of the right to relief in equity by way of an injunction, claim the respondents have entered into a combination and conspiracy to interfere with the duty of the parents to provide their children with the education required to be provided for them by the compulsory education laws of Ohio.

Generally, if a combination or conspiracy exists which threatens irreparable injury to property and there is no other available remedy, then a court of equity may grant injunctive relief. Equity will not deny relief for the reason that the act complained of is a crime, if facts also exist which would permit equity otherwise to interfere.

Conspiracy has been defined as a combination of two or more persons by some concert of action to accomplish some criminal or unlawful purpose, or some purpose not in itself criminal or unlawful by criminal or unlawful means.

In substance the action of respondents complained of as constituting a conspiracy is that they fail and refuse to send their children to a school which meets the minimum standards of education set up by the laws of the state of Ohio. These compulsory education laws also provide penalties for violation of these laws, and parents who are convicted of failing to send their children to schools acceptable under the state law may be fined or imprisoned as provided in Sections 3321.38, 3321.99 and 4109.99, Revised Code. Prior to the enactment of the compulsory education laws there was nothing which required a parent to send his child to a school providing a minimum standard of education, and failure to send such child to a school providing such minimum standard of education was not unlawful. Upon enactment of the compulsory attendance laws, acts were made unlawful which were lawful before.

The remedy available to the relators is limited by the statute. In the absence of the statute the relators would have no remedy whatsoever.

In the case of *Fletcher* v. *Coney Island, Inc.*, 165 Ohio St., 150, it is stated, quoting from *City of Zanesville* v. *Fannan*, 53 Ohio St., 605, as follows:

" 'Where a statute which creates a new right, prescribes the remedy for its violation, the remedy is exclusive; but when a new remedy is given by statute for a right of action existing independent of it, without excluding other remedies already known to the law, the statutory remedy is cumulative merely, and the party may pursue either at his option.' "

In the same case, the court quotes the first paragraph of the syllabus in the case of *Commissioners* v. *Bank of Findley*, 32 Ohio St., 194:

" * * * Where a statute creates a new offense by prohibiting and making unlawful anything which was lawful before, and provides a specific remedy against such new offense (not antecedently unlawful) by a particular sanction and method of proceeding, that method of proceeding, and none other, must be preserved [pursued]."

The enactment of the compulsory education law created a new right and prescribed the exclusive remedy and penalty for its violation. As stated by the court in the above cited case:

"If the General Assembly has provided a remedy for the enforcement of a specific new right, a court may not on its own initiative apply another remedy it deems appropriate."

In 43 Corpus Juris Secundum, 762, Section 150, it is stated:

"The objections to 'criminal equity' are that it deprives defendant of his jury trial; that it deprives him of the protection of the higher burden of proof required in criminal prosecutions; that, after imprisonment and fine for violation of an equity injunction, defendant may be subjected under the criminal law to punishment for the same acts; that it substitutes for the definite penalties fixed by the Legislature whatever punishment for contempt a particular judge may see fit to exact; that it is often no more than an attempt to overcome by circumvention the supposed shortcomings of jurors; and that it may result, or induce the public to believe that it results, in the arbitrary exercise of power and in government by injunction. The possibility that many persons will violate the law and that many suits will be required to enforce it, the mere fact that the officers charged with the duty of enforcing the provisions of the criminal law neglect or refuse to perform their duty in this regard, the failure of local juries to convict, or the fact that the punishment for the crime is inadequate does not warrant relief by injunction."

The plaintiff named in the petition is the state of Ohio and the relators named therein are Claybourne Chalfin, attendance officer of the Hardin County School District, and the Board of Education of the Hardin County School District.

The respondents deny the right of the relators named to prosecute this action and contend that such an action can be prosecuted only as provided for in Section 3767.03, Revised Code. We recognize that the right of relators to prosecute this action is very questionable. However, in view of the holding of the court that neither a public nuisance nor a conspiracy is shown to exist in the instant case, the court finds it unnecessary to pass upon the question of the right of relators to bring the action.

In the opinion of the court the facts in this case do not sup-

port relators' claim that the respondent parents by their acts have conspired together to commit a crime. Each parent, in not sending his child to a school which meets the standards of education prescribed by the board of education of the state of Ohio, is acting as an individual parent and determining for his child what is by the parent deemed best for such child. The fact that a number of parents hold the same belief and act in the same way does not constitute a conspiracy, although acting upon such beliefs may subject each of the parents to criminal prosecution for his individual crime. The only evidence in the record that the respondents acted in concert was the testimony of John D. Mast and Joni Hershberger, but that had probative value only in proving that in augmenting their religious beliefs they acted in concert in operating their own schools in a manner which did not meet the prescribed standards of the state. That, in itself, was not proof of a conspiracy to commit an unlawful act or to commit a lawful act in an unlawful manner. They could operate their schools in a manner which did not meet these standards without violating any law. The violations of law, if any, were the individual failures of the respective parents to send their children to schools which met the prescribed standards, and there is no evidence of any probative value that the parents conspired together, or aided and abetted each other, or were aided or abetted by any of the other defendants in accomplishing the individual crimes prohibited by the compulsory education laws.

On the issues joined the court finds for the respondents and against the relators and that the relators are not entitled to relief in a court of equity by way of injunction. Relators' petition is, therefore, dismissed.

This decision is limited to the precise question of the jurisdiction of a court of equity to grant relief upon the record presented. This decision should not be construed in any way as upholding the right of the respondent parents to refuse to send their children to a school which meets the compulsory educational laws of the state, or as relieving them from compliance with such laws.

*Judgment accordingly.*

YOUNGER, P. J., and GUERNSEY, J., concur.