OPINION
{¶ 1} This is an administrative appeal of an alleged violation of the Ohio Fire Code ("Fire Code") by Abdalla's Tavern ("Appellee"). The State Board of Building Appeals ("BBA") determined that Appellee had committed two violations of the Fire Code. Appellee filed an appeal with the Jefferson County Court of Common Pleas, which reversed the BBA decision. The Department of Commerce, Division of State Fire Marshal ("Fire Marshal"), is the Appellant in this case, disagreeing with the reversal of the BBA decision. The record shows that the relevant Fire Code provisions that Appellee violated should not have been retroactively applied to Appellee by the BBA, and the judgment of the Jefferson County Court of Common Pleas is affirmed.
 {¶ 2} On October 25, 2001, an inspector from the office of the Fire Marshal visited Abdalla's Tavern, located in Stratton, Ohio, to inspect the premises for possible fire safety violations. The tavern has an extensive kitchen and cooking area, including a number of grills and deep frying units.
 {¶ 3} On November 9, 2001, the Fire Marshal cited Appellee for two violations of the Ohio Fire Code. The citation states that Appellee violated the following regulations:
 {¶ 4} Ohio Adm. Code 1301:7-7-03(I)(1); "Two (2) existing commercial cooking appliances (grills and deep fryers) and one domestic cook stove utilized for commercial purposes are not protected with commercial exhaust hood and duct system."
 {¶ 5} Ohio Adm. Code 1301:7-7-03(I)(1); "Commercial cooking operation three (3) are not protected with an approved fire suppression system."
 {¶ 6} The citation ordered Appellee to make the following changes within 30 days in order to abate the violations:
 {¶ 7} "1. Install a commercial hood and duct system in accordance with the mechanical code listed in rule 1301:7-7-44 of the Administrative Code. A permit to install shall be from the building official having jurisdiction."
 {¶ 8} "2. Install fire suppression system in accordance with the mechanical code listed in rule 1301:7-7-44 of the Administrative Code. A permit to install shall be from the building official having jurisdiction."
 {¶ 9} Appellee requested and was granted a hearing before the BBA on January 17, 2002, to challenge the citation. At the hearing, Appellee conceded that it was not in compliance with the current Fire Code standards. Appellee's primary argument at the hearing was that the tavern had been in continuous operation since 1937 and that the current Fire Code should not be retroactively applied to Appellee's business. Appellee based this argument on provisions in the Fire Code and in the Ohio Building Code ("Building Code") that exempt preexisting buildings and conditions from new code requirements except in cases where the fire marshal finds a "distinct hazard to life or property" (Ohio Adm. Code1301:7-1-02(A)), or where there is a "serious safety or sanitation hazard" (Ohio Adm. Code 4101:2-1-09).[1] Appellee argued that there was no evidence of a distinct or serious hazard that would have required the type of abatement listed in the Fire Marshal citation.
 {¶ 10} The Fire Marshal's evidence consisted primarily of testimony from Ms. Virginia Canankamp, a State Fire Marshal Inspector, and from some photographs taken by Ms. Canankamp when she inspected Appellee's tavern.
 {¶ 11} Ms. Canankamp first testified that one of the hoods covering the cooking grills did not cover the entire grill area, supposedly in violation of an unidentified fire regulation. (Tr. p. 12.) After considerable debate with the BBA board members, she revised her testimony because it was contradicted by her own photograph, Exhibit G-8. (Tr. p. 15.)
 {¶ 12} She then testified that the air duct to the grill exhaust fan was blocked, preventing the exhaust system from working. (Tr. p. 17.) She testified that the cooks from the tavern told her, "they have the makeup air blocked off because they said it is too cold to cook in there without it." (Tr. p. 17.) Once again, the photograph that Ms. Canankamp took does not substantiate her testimony, which she freely admitted. (Tr. p. 17; Exhibit G-4.) She also testified that there was no grease dripping under the outside of the exhaust fan, and submitted this as proof that the fan was not working: "I was just showing that there is no grease coming out that usually you find in these systems." (Tr. p. 18.)
 {¶ 13} She then testified that there was grease dripping underneath the outside vent of a second exhaust fan. (Tr. p. 19.)
 {¶ 14} At this point, Ms. Canankamp began testifying about the applicable law. She stated: "In the fire code it says new and existing buildings not in strict compliance with the code shall be brought up to the code." (Tr. p. 19.)
 {¶ 15} She then testified that Appellee was not in compliance with the Fire Code because the grill hood did not contain a continuous piece of metal covering the entire wall above the grill and extending to the grill itself. (Tr. p. 20.) She admitted that there was metal covering the wall, but stated that it had been welded to the grill hood. (Tr. p. 21.) She stated that the reason it needed to be a continuous piece of metal was, "so you don't get grease behind the appliances, behind the walls, and it is able to be cleaned." (Tr. p. 20.)
 {¶ 16} Board member Bombelles then pointed out to Ms. Canankamp that Appellee was not disputing the Building Code requirements of a commercial grill hood, but rather, was disputing whether a preexisting facility was required to conform to the current code absent proof of a hazardous condition. (Tr. p. 21.)
 {¶ 17} Ms. Canankamp then began testifying as to the hazard of not having an automatic fire suppression system under the grill hood. (Tr. p. 21.) She argued that the stove or fryer might be left on when no one was around, and in that case, only an automatic suppression system would extinguish the fire. (Tr. p. 21.) She did not present any evidence that this had ever happened or was likely to happen. She then changed her opinion about the applicable law: "the fire code does say that new and existing buildings not in strict compliance with the code shall be allowed to continue if it does not produce a hazard, and this is a hazard." (Tr. pp. 21-22.)
 {¶ 18} At this point a question by board member Guenther made it clear that the issue under review was whether there was a, "preponderance of the evidence there is going to be a hazard to life safety?" (Tr. p. 22.)
 {¶ 19} Ms. Canankamp testified that she thought one of the outside walls of the tavern showed evidence of a prior fire. (Tr. p. 23.) She stated that the wall, as pictured in Exhibit G-3, was covered with soot and had no grease on it. (Tr. p. 23.) It is not clear how this lack of grease supported her opinion that there had been a fire.
 {¶ 20} She returned to her concern that grease might seep behind the welded portion of the metal hood and metal wall covering, possibly causing fire, "in areas you can't get to." (Tr. p. 24.) She did not explain how an automated fire suppression system under the hood would diminish the danger of a fire behind the hood.
 {¶ 21} She again testified that it was a hazard that one of the exhaust fans was kept closed with a wedge of wood. (Tr. p. 24.)
 {¶ 22} She testified that she had just heard of a fire in Akron caused by an unattended deep fryer, and that this was proof that Appellee's kitchen was a hazard. (Tr. p. 25.)
 {¶ 23} Attorney Hilary Damaser, on behalf of the Fire Marshal, stated that the law required Appellee to bring its commercial kitchen up to current mechanical code standards, citing Ohio Adm. Code1301:7-7-03(I)(1), and that there were no exceptions for preexisting structures. (Tr. p. 26.) Appellee's professional consultant, Dave Collins, pointed out that R.C. 3781.11(B) requires the rules of the board of building standards to take precedence over the rules of the fire marshal where the rules are in conflict, and he testified that the rules of the board of building standards clearly provide an exception for preexisting structures. (Tr. p. 26.) Attorney Damaser later conceded that Mr. Collins was correct. (Tr. p. 30.)
 {¶ 24} At this juncture, the hearing devolved into a series of comments and interruptions by various board members. Ms. Canankamp also repeated a few more times that the kitchen presented a serious hazard, without adding any significant factual information.
 {¶ 25} Midway through the proceedings, board member Cabot decided for himself that a serious hazard existed, and the remainder of the hearing revolved around how Appellee would comply with the requirements of the citation. (Tr. pp. 33ff.) Mr. Cabot concluded that, "[j]ust the mere existence of this operation in this condition, to me, is a serious hazard * * *." (Tr. pp. 37-38.)
 {¶ 26} Finally, Appellee's attorney, Frank Bruzzese, interrupted the discussion in order to get some photographs and other facts into evidence. (Tr. p. 40.) Appellee entered into evidence a letter from the Fire Chief of the Stratton Volunteer Fire Department which stated: "this is a fully operational business that seems not to have any problems. [T]he building is in good structural shape and everything seems to be in good condition not only inside and out. As far as my knowledge of inspections and this building I would have to say it [is] safe for business." (1/17/02 Tr., Appellant's exhibit 1.)
 {¶ 27} Appellee also submitted a letter from the Jefferson County Health Department stating that Appellee's tavern had not been cited for any health violations in at least seven years. (1/17/01 Tr., Appellant's exhibit 1.)
 {¶ 28} After the presentation of evidence, the BBA voted to uphold the citation. (1/24/02 Decision.)
 {¶ 29} Appellee filed an appeal of the BBA decision to the Jefferson County Court of Common Pleas. The court sustained a motion for stay of execution of the BBA decision.
 {¶ 30} On July 24, 2002, after the parties submitted briefs and oral arguments, the court rendered its decision. In reviewing the record, the common pleas court judge made the following observation:
 {¶ 31} "[I] cannot recall one instance where there was such a disorganized and disorderly presentation of evidence as presented in the transcript filed in this case. The transcript does not even reflect where the members of the Board [of Building Appeals] provided an opportunity to Appellant [Abdalla's Tavern] to even cross-examine the principal witness for the State Fire Marshall although the Board members took it upon themselves to ask as many questions as they desired." (7/24/02 J.E., p. 1.)
 {¶ 32} The court found that Appellee was not given an opportunity to cross-examine the Fire Marshal's chief witness. The court discounted the reliability and veracity of Ms. Canankamp's testimony, particularly when compared to her own photographs. The court noted that comments from BBA board members indicated that they also questioned Ms. Canankamp's veracity. The court noted that her opinions were based, in part, on hearsay statements of some of Appellee's employees, and that the Fire Marshal did not call these employees as witnesses. The court discounted Ms. Canankamp's testimony about the discoloration on one of the outside walls of the tavern because there was no attempt to explain how grease would have gotten on an outside wall that was not near a kitchen exhaust fan duct.
 {¶ 33} The court noted that Ms. Canankamp's explanation of the applicable law was incorrect. The court held that Ohio Adm. Code 1301:7-1-02
allows preexisting structures to be exempt from compliance with changes in the Fire Code, "where the exceptions do not constitute a distinct hazard to life or property * * *." (7/24/02 J.E., p. 3.) The court defined "distinct" as, "presenting a clear unmistakable impression." (7/24/02 J.E., p. 3.) The court pointed out that the local fire chief did not find any hazard in the tavern, much less a distinct hazard.
 {¶ 34} The court acknowledged that Appellee had challenged the constitutionality of the Fire Code and the Fire Marshal's actions in this case. The court held that R.C. 3737.41(A) allowed the Fire Marshal to issue a citation if it found that a building was especially liable to fire, endangered other buildings, or for "any other reason." The court held that R.C. 3737.41(A) gave government officials "unbridled discretion" to issue citations without needing any basis in fact. (7/24/02 J.E., p. 3.) The court held that a business owner had no standards to rely upon to determine if he was in compliance with the law, because not even the opinion of the local fire chief was sufficient to avoid receiving a citation and having that citation upheld on appeal to the BBA. The court held that the enforcement powers of Ohio Adm. Code1301:7-1 and R.C. 3737.41 were unconstitutional on their face or as applied to Appellee. The court reversed the decision of the BBA and vacated the Fire Marshal's citation.
 {¶ 35} On August 21, 2002, the Fire Marshal filed this appeal of the July 24, 2002, judgment.
 {¶ 36} The Fire Marshal's first assignment of error deals with the standard of review used by the court of common pleas:
 {¶ 37} "The Court of Common Pleas Erred by Failing to Apply the Correct Standard of Review When Reviewing the Board of Building Appeals' Decision."
 {¶ 38} The Fire Marshal states that R.C. 119.12 requires a court of common pleas to affirm the decision of an administrative board or agency when that decision is supported by reliable, probative and substantial evidence and is in accordance with law, citing Kennedy v.Marion Correctional Inst. (1994), 69 Ohio St.3d 20, 21, 630 N.E.2d 324, in support. The Fire Marshal argues that the court of common pleas must give due deference to an administrative board's resolution of factual issues, citing Univ. of Cincinnati v. Conrad (1980), 63 Ohio St.2d 108,111, 407 N.E.2d 1265. The Fire Marshal contends that the trial court inappropriately substituted its own judgment for that of the BBA.
 {¶ 39} Before dealing with the trial court's standard of review, a few comments on this Court's standard of review are in order. R.C. 119.12
limits the scope of an administrative appeal to the Court of Appeals when the court of common pleas rules against the administrative agency:
 {¶ 40} "Such appeal by the agency shall be on questions of law relating to the constitutionality, construction, or interpretation of statutes and rules of the agency, and in such appeal the court [of appeals] may also review and determine the correctness of the judgment of the court of common pleas that the order of the agency is not supported by any reliable, probative, and substantial evidence in the entire record." (Emphasis added.)
 {¶ 41} R.C. 119.12 gives this Court the discretionary power to decide whether to review the factual determination of the court of common pleas. This means that we are not required to review the Fire Marshal's first assignment of error, which deals with whether the evidence supports the trial court's reversal of the BBA decision.
 {¶ 42} That said, we have decided to engage in a discretionary review of the factual issue presented by the Fire Marshal, primarily because we believe the Fire Marshal has misinterpreted the role of the court of common pleas in the administrative review process.
 {¶ 43} When reviewing an administrative decision pursuant to R.C. § 119.12, a common pleas court acts in an appellate capacity, but also has limited powers to consider the weight of the evidence. Univ.Hosp., Univ. of Cincinnati College of Medicine v. State Emp. RelationsBd. (1992), 63 Ohio St.3d 339, 343, 587 N.E.2d 835.
 {¶ 44} The extent of the power of the court of common pleas to review an agency decision is contained in R.C. 119.12:
 {¶ 45} "The court [of common pleas] may affirm the order of theagency complained of in the appeal if it finds, upon consideration of the entire record and such additional evidence as the court has admitted,that the order is supported by reliable, probative, and substantialevidence and is in accordance with law. In the absence of such a finding, it may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law." (Emphasis added.)
 {¶ 46} The Ohio Supreme Court has held that:
 {¶ 47} "* * * determining whether an agency order is supported by reliable, probative and substantial evidence essentially is a question of the absence or presence of the requisite quantum of evidence. Although this in essence is a legal question, inevitably it involves a consideration of the evidence, and to a limited extent would permit a substitution of judgment by the reviewing Common Pleas Court."
 {¶ 48} "In undertaking this hybrid form of review, the Court of Common Pleas must give due deference to the administrative resolution of evidentiary conflicts. For example, when the evidence before the court consists of conflicting testimony of approximately equal weight the court should defer to the determination of the administrative body, which, as the factfinder, had the opportunity to observe the demeanor of the witnesses and weigh their credibility. However, the findings of the agency are by no means conclusive.
 {¶ 49} "Where the court [of common pleas], in its appraisal of the evidence, determines that there exist legally significant reasons for discrediting certain evidence relied upon by the administrative body, and necessary to its determination, the court may reverse, vacate, or modify the administrative order. Thus, where a witness' testimony is internally inconsistent, or is impeached by evidence of a prior inconsistent statement, the court may properly decide that such testimony should be given no weight. Likewise, where it appears that the administrative determination rests upon inferences improperly drawn from the evidence adduced, the court may reverse the administrative order." Univ. ofCincinnati v. Conrad, supra, 63 Ohio St.2d at 111, 407 N.E.2d 1265.
 {¶ 50} It is clear that the court of common pleas must give proper respect to the factual determinations of an administrative agency but, in the final analysis, is not bound by those findings and may substitute its own judgment for that of the agency in some instances. Therefore, Appellant's argument that the court of common pleas must in every instance defer to the findings of the BBA is incorrect.
 {¶ 51} This Court is limited to reviewing whether the court of common pleas abused its discretion in overturning the decision of the BBA. Kennedy v. Marion Correctional Inst., supra, 69 Ohio St.3d at 21,630 N.E.2d 324. An abuse of discretion connotes that the trial court acted in an unreasonable, arbitrary, or unconscionable manner. Blakemorev. Blakemore (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. A common pleas court abuses its discretion when its decision is without a reasonable basis or is clearly wrong. Reese v. Copley Twp. Bd. ofTrustees (1998), 129 Ohio App.3d 9, 13, 716 N.E.2d 1176.
 {¶ 52} On the other hand, an appellate court conducts a de novo review on issues of law. Univ. Hosp., Univ. of Cincinnati Collegeof Medicine, supra, 63 Ohio St.3d at 343-344, 587 N.E.2d 835.
 {¶ 53} The Fire Marshal does not appear to dispute that the relevant factual issue before the BBA, before the court of common pleas, and before this Court, is whether Appellee's kitchen presented a "distinct hazard" as set forth in Ohio Adm. Code 1301:7-1-02(A):
 {¶ 54} "(A) FM-101.1 New and Existing Conditions: The provisions of this code shall apply equally to new and existing buildings and conditions, as hereinafter provided, except that existing conditions notin strict compliance with the requirements of this code shall bepermitted to continue where the exceptions do not constitute a distincthazard to life or property in the opinion of the fire official. If adistinct hazard to life or property cannot be proven by the fire official by a preponderance of the evidence, the provisions of this code shall notapply to an existing building or condition." (Emphasis added.)
 {¶ 55} Appellee presents a very thorough and persuasive argument that neither the Fire Code nor the Building Code permit the retroactive application of new Fire Code regulations to a preexisting building except when a serious and distinct hazard is found and that no serious and distinct hazard was proven in this case. There is no dispute that Appellee has been in continuous operation since at least the 1960's. The Fire Marshal does not appear to dispute that the changes it ordered Appellee to make in the grill hood, grill exhaust fan, and automatic fire suppression system were not required by the Fire Code as it existed in the 1960's. It is also clear that the citation that the Fire Marshal issued to Appellant was a citation for being in violation of the Fire Code. See R.C. 3737.42(A). Therefore, according to Ohio Adm. Code1301:7-1-02(A), the Fire Marshal first needed to prove that the Fire Code violation created a distinct hazard to life or property.
 {¶ 56} The phrase "distinct hazard" is not defined in the relevant sections of the Ohio Administrative Code. We must resort to judicial rules of construction to help us interpret the phrase "distinct hazard." "Words appearing in administrative regulations are generally given their plain and ordinary meaning." State ex rel. Weich Roofing, Inc. v. Indus.Comm. (1990), 69 Ohio App.3d 281, 283, 590 N.E.2d 781. The American Heritage Dictionary (1983) defines "distinct" as "1. Individual, separate; 2. Easily perceived, clear; 3. Explicit, unquestionable." The same dictionary also defines "hazard" as "a danger, risk." Based on the ordinary meaning of these words, the Fire Marshal needed to show that Appellee's tavern posed a clear, explicit, and easily perceived danger.
 {¶ 57} In relation to the requirement for finding a "distinct hazard," though, there are constitutional considerations that have an impact on how the phrase is interpreted.
 {¶ 58} As Appellee points out, the Ohio and United States Constitutions allow a person to continue to use his or her property in ways that were legal when the property was acquired unless the property is declared to be a nuisance:
 {¶ 59} "The right to continue to use one's property in a lawful business and in a manner which does not constitute a nuisance and which was lawful at the time it was acquired is within the protection of Section 1, Article XIV, Amendments, Constitution of the United States, and Section 16, Article I of the Ohio Constitution, which provide that no person shall be deprived of life, liberty or property without due process of law." City of Akron v. Chapman (1953), 160 Ohio St. 382, 388,116 N.E.2d 697.
 {¶ 60} "In the absence of a determination that the continued use of improved real property without conforming to building standards subsequently adopted would constitute a nuisance, improvements necessary to comply with the new standards may not constitutionally be compelled by a public agency against the private owner of such property." Gates Co.v. Housing Appeals Bd. of Columbus (1967), 10 Ohio St.2d 48, 225 N.E.2d 222, syllabus.
 {¶ 61} In other words, "neither zoning nor building ordinances may be enforced against preexisting, otherwise lawful, nonconforming structures absent a declaration of nuisance." Northern Ohio SignContractors Assn. v. Lakewood (1987), 32 Ohio St.3d 316, 319,513 N.E.2d 324.
 {¶ 62} This principle has been based on various constitutional provisions. As stated in Chapman, it is based on the due process clause.Chapman, 160 Ohio St. at 388, 116 N.E.2d 697. In Northern Ohio SignContractors Assn., the principle is based on Section 19, Article I of the Ohio Constitution, which states that, "[p]rivate property shall ever be held inviolate, * * *." Northern Ohio Sign Contractors Assn.,32 Ohio St.3d at 323, 513 N.E.2d 324. Northern Ohio Sign Contractors Assn. also indicates that the Takings Clause of the Fifth Amendment may be implicated when newly enacted building regulations are applied to preexisting structures. Id. The Takings Clause prohibits the government from taking private property for public use without just compensation.
 {¶ 63} The reason behind the holdings of these cases is clear: "[t]o hold otherwise would be to permit the compulsive improvement of any real property merely upon a legislative finding that the improvement is required to promote the public health, safety or morals, rather than upon a factual determination that the continued use of the property without improvement immediately and directly imperils the public health, safety or morals." Gates, 10 Ohio St.2d at 52, 225 N.E.2d 222.
 {¶ 64} The Ohio Supreme Court has defined nuisance in this way: "nuisance, i.e., conditions that directly jeopardize safety * * *."Manufacturer's Natl. Bank of Detroit v. Erie Cty. Road Comm. (1992),63 Ohio St.3d 318, 322, 587 N.E.2d 819. To put it another way, "[t]o constitute a nuisance, either public or private, the thing or act complained of as constituting a nuisance must either cause injury to the property of another, obstruct the reasonable use or enjoyment of his property or cause physical discomfort to him." State ex rel. Chalfin v.Glick (1960), 113 Ohio App. 23, 27, 177 N.E.2d 293.
 {¶ 65} Keeping the aforementioned definitions of "distinct hazard" and "nuisance" in mind, it is not surprising that the court of common pleas found inadequacies in the Fire Marshal's evidence, particularly in the testimony of the state's key witness, Ms. Canankamp. Her testimony did not make much sense. She attempted to argue that both the presence of grease and the lack of grease outside the exhaust fans constituted Fire Code violations. She indicated that the lack of grease on an outside wall was somehow proof that there had been a fire. She stated that it would be dangerous if grease entered behind the metal hood over the grill, but presented no evidence that this had actually happened. She testified as to certain aspects of the grill hood and exhaust fan, and then admitted that her photographs did not corroborate her testimony. She was very concerned about one of the exhaust ducts being kept closed with a wedge of wood, and used this to justify the Fire Marshal's order that Appellee replace the entire grill hood and install a completely new fire suppression system. If the problem was that the employees were preventing the exhaust fan from operating, it is not clear how replacing the entire grill hood and ductwork would have solved the problem.
 {¶ 66} The trial court gave many reasons for disregarding or discounting the testimony of the state's only witness, Ms. Canankamp. She contradicted herself a number of times. Her own photographs did not support her testimony. She did not understand the legal principles involved. She based her opinion on hearsay. Finally, the court noted that Appellee was not given a chance to cross-examine her. All these reasons are entirely supported by the record.
 {¶ 67} Obviously, if the testimony of the Fire Marshal's only witness is completely unreliable, there is not much basis for deciding the case in favor of the Fire Marshal. The trial court's decision to discount the Fire Marshal's evidence, particularly the testimony of Ms. Canankamp, is based on a number of solid reasons, and was not arbitrary or clearly wrong. Even a cursory reading of the record, here, reveals numerous deficiencies and inconsistencies. Therefore, the trial court did not abuse its discretion in reversing the decision of the BBA based on the trial court's assessment of the evidence. Appellant's first assignment of error is overruled.
 {¶ 68} Appellant's second assignment of error states:
 {¶ 69} "The Court of Common Pleas Erred by Reviewing the Board of Building Appeals' Decision Pursuant to the Standards Set Forth in R.C.3737.41(A). Judgment Entry, pp. 3-4."
 {¶ 70} The Fire Marshal argues that the court of common pleas based its decision, in part, on its conclusion that R.C. 3737.41(A) was unconstitutional. The trial court found that R.C. 3737.41(A) allowed the Fire Marshal to issue citations for the reasons listed in the statute and "for any other reason." The court found that this language gave the Fire Marshal unbridled discretion in issuing citations. The Fire Marshal argues that the citation it issued to Appellee was based on R.C. 3737.42, and that R.C. 3737.41(A) has no bearing on this case.
 {¶ 71} The Fire Marshal is correct in this argument. The citation clearly states: "pursuant to the authority vested in me by Section 3737.42
of the Ohio Revised Code * * * you are ordered to abate the violation(s) set forth above * * *." R.C. 3737.42(A) states, in pertinent part: "[I]f, upon inspection or investigation, the fire marshal, an assistant fire marshal, or a certified fire safety inspector believes that the state fire code has been violated, he shall with reasonable promptness issue a citation to the responsible person." Under R.C. 3737.42, the citation is based on specific violations of the Fire Code. The trial court's concerns about the broad and vague language of R.C. 3737.41(A) do not apply to R.C. 3737.42. The court's comments about the constitutionality of R.C. § 3737.41 are mere dicta and cannot be used to support the decision reached by the trial court.
 {¶ 72} Nevertheless, the trial court gave other reasons for rendering its decision. As already noted, the trial court found no factual basis to support the BBA decision. Given that there are other grounds for upholding the trial court's judgment, the court's erroneous references to R.C. 3737.41(A) do not warrant a reversal of the ultimate judgment in this case.
 {¶ 73} Appellant's third assignment of error states:
 {¶ 74} "The Court of Common Pleas Erred by Declaring R.C. 3737.41
and Ohio Adm. Code Chapter 1301:7-1 Unconstitutional and Unconstitutional as Applied."
 {¶ 75} Appellant argues that the trial court erroneously concluded that R.C. 3737.41 and Ohio Adm. Code 1301:7-1 are unconstitutional on their face and as applied to this case. We have already determined that R.C. 3737.41 is irrelevant to this case, so we will limit our discussion to Ohio Adm. Code 1301:7-1.
 {¶ 76} Administrative regulations, like statutes, are presumed to be constitutional. Roosevelt Properties Co. v. Kinney (1984),12 Ohio St.3d 7, 13, 465 N.E.2d 421. Any doubts about the constitutionality of an administrative regulation should be resolved in favor of a construction which upholds its validity. State v. Dorso
(1983), 4 Ohio St.3d 60, 61, 446 N.E.2d 449. A party challenging the validity of an ordinance or regulation bears the burden of demonstrating its unconstitutionality. Mayfield-Dorsh, Inc. v. S. Euclid (1981),68 Ohio St.2d 156, 157, 22 O.O.3d 388, 429 N.E.2d 159.
 {¶ 77} A statute or regulation may be declared unconstitutional either on its face or as applied to a particular set of facts. Belden v.Union Cent. Life Ins. Co. (1944), 143 Ohio St. 329, 28 O.O. 295,55 N.E.2d 629, paragraph four of the syllabus. "If a statute is unconstitutional as applied, the State may continue to enforce the statute in different circumstances where it is not unconstitutional, but if a statute is unconstitutional on its face, the State may not enforce the statute under any circumstances." Women's Med. Professional Corp. v.Voinovich (C.A.6, 1997), 130 F.3d 187, 193. In addition, a statute or regulation may be unconstitutional as applied to a class of persons, or it may be unconstitutional as applied to an individual person. See, e.g., Washington v. Glucksberg (1997), 521 U.S. 702, 117 S.Ct. 2258,138 L.Ed.2d 772, fn. 4.
 {¶ 78} The trial court was concerned that Ohio Adm. Code 1301:1-7
gave a fire inspector unbridled discretion in issuing citations without requiring any basis in fact. The language used by the trial court indicates a concern that the regulation was constitutionally void for vagueness.
 {¶ 79} A statute or regulation is unconstitutionally vague when it is written, "* * * in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, * * *." Connally v. General Constr. Co. (1926), 269 U.S. 385, 391,46 S.Ct. 126, 70 L.Ed. 322; see, also, Palmer v. Euclid (1971), 402 U.S. 544,91 S.Ct. 1563, 29 L.Ed.2d 98; Cincinnati v. Hoffman (1972), 31 Ohio St.2d 163,285 N.E.2d 714. The due process doctrine of vagueness requires the terms of an ordinance or regulation to be clear enough to prevent, "arbitrary and discriminatory enforcement," by the body required to administer the law. Smith v. Goguen (1974), 415 U.S. 566, 94 S.Ct. 1242,39 L.Ed.2d 605.
 {¶ 80} "[A] statute is not void for vagueness merely because it could have been more precisely worded. Roth v. United States (1957),354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498. The legislature need not define every word of a statute. Words of ordinary usage will be given the meaning commonly attributed to them. State v. Loless (1986),31 Ohio App.3d 5, 31 OBR 19, 507 N.E.2d 1140, citing. Dorso, supra,4 Ohio St.3d 60, 4 OBR 150, 446 N.E.2d 449. Mathematical certainty is not required. `* * * The test is whether the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. * * *' Jordan v. De George (1951),341 U.S. 223, at 231-232, 71 S.Ct. 703, at 708, 95 L.Ed. 886, at 892."State ex rel. Rear Door Bookstore (1992), 63 Ohio St.3d 354, 358,588 N.E.2d 116.
 {¶ 81} Ohio Adm. Code 1301:7-1-02 is not void for vagueness. It has two main provisions, both of which are very clear. First, it declares that the provision of the Fire Code apply equally to new and existing buildings and conditions. The details are spelled out in every specific provision of the Fire Code.
 {¶ 82} Second, it declares that existing buildings and conditions that are not in strict compliance with code shall be permitted to continue unless the building or condition presents a distinct hazard to life or property. As already pointed out in the analysis of the first assignment of error, this requirement of proving a distinct hazard must encompass the constitutional requirement that the government prove the existence of a nuisance before imposing new building regulations or codes on a property that was previously in compliance with all laws. In fact, given the common and ordinary meaning of "distinct hazard," and the definitions of "nuisance" used in Gates, Manufacturer's Natl. Bank ofDetroit, and State ex rel. Chalfin, supra, the two concepts appear to be substantially the same. The Fire Marshal must prove the existence of a specific, immediate and clearly identifiable danger that directly imperils the public health, safety or morals. Looking at the issue from another perspective, for Appellee to be free from the requirements of every newly enacted fire regulation, Appellee must not create a specific, immediate and clearly identifiable danger from fire that directly imperils the public health, safety or morals.
 {¶ 83} Although Ohio Adm. Code 1301:7-1-02 is not unconstitutionally vague on its face, the trial court is correct that the BBA attempted to apply the regulation to Appellee in an unconstitutional manner. The Fire Marshal did not prove that Appellee's tavern constituted a nuisance as previously defined. Without proof that Appellee's tavern constituted a nuisance, Appellee cannot be required to undergo expensive improvements to come into compliance with the current Fire Code. This conclusion is not based on the vagueness of the Ohio Adm. Code, but rather, on other constitutional protections, such as due process rights, the right to private property, and the right against the government taking private property without just compensation, as stated in Chapman,Gates and Northern Ohio Sign Contractors Assn., supra. Although it would have been more appropriate for the trial judge to simply state that the order of BBA was not supported by reliable, probative and substantial evidence (which is the review standard set forth in R.C. § 119.12), it was not an abuse of discretion to render a decision on constitutional grounds, especially since the constitutional requirements are almost identical to the provision in Ohio Adm. Code 1301:7-1-02 requiring proof of a "distinct hazard." Furthermore, a court of appeals will uphold a judgment that reaches the correct result even if the trial court uses erroneous reasoning in reaching the result. Mowery v. Shoaf,148 Ohio App.3d 403, 2002-Ohio-3006 at ¶ 25. The trial court's ultimate judgment in this case was correct, and it is the court's ultimate judgment we are affirming in this Opinion.
 {¶ 84} Appellant's fourth assignment of error asserts:
 {¶ 85} "The Court of Common Pleas Erred by Denying the State Fire Marshal's Counsel the Opportunity to Present Oral Argument Regarding the Constitutionality of the Statutes and Rules at Issue."
 {¶ 86} The Fire Marshal argues that its counsel was prevented from presenting any constitutional analysis at oral argument in front of the court of common pleas. Assuming arguendo that this was true, it is unclear how this might have prejudiced the Fire Marshal. Any constitutional arguments are matters of law decided de novo by this Court. Liposchak v. Admr., Ohio Bur. of Workers' Comp. (2000),138 Ohio App.3d 368, 385, 741 N.E.2d 537. The Fire Marshal has fully presented those arguments on appeal. The Fire Marshal also addressed at least one constitutional issue in its brief to the court of common pleas, and there is no indication that the Fire Marshal was prevented from addressing other constitutional issues in that brief. (6/24/02 Merit Brief.) The trial court's action, even if true, did not affect the Fire Marshal's substantial rights and constitutes harmless error. Civ.R. 61.
 {¶ 87} It is clear from the record that the court of common pleas did not find sufficient evidence in the record to support the decision of the BBA. For some reason, though, the trial court's judgment entry states that its decision was based on constitutional grounds. We find that the trial court did not need to address any constitutional issues in rendering its decision. Although we disagree with the trial court's discussion of the constitutionality of certain statutes and administrative regulations, we firmly uphold the trial court's ultimate judgment. The trial court did not abuse its discretion in discounting the evidence of the Fire Marshal's key witness and, on that basis, we affirm the judgment of the trial court. The Fire Marshal's first, third and fourth assignments of error are overruled. Although the Fire Marshal's second assignment of error is correct, it is not dispositive of this appeal and does not indicate reversible error.
Vukovich and DeGenaro, JJ., concur.
[1] This section of the Ohio Administrative Code was renumbered on January 1, 2002, to 4101:1-1-02.